Opinion issued February 26, 2009











In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00733-CV




KATHLEEN MARIE KASPARIK STOLL, MARY FRANCES KASPARIK
EVANS, LESLIE LOYCE KASPARIK MORRIS, AND GORDON MORRIS,
Appellants

V.

KAREN L. HENDERSON, INDIVIDUALLY AND AS INDEPENDENT
EXECUTRIX OF THE ESTATE OF EDWARD F. KASPARIK,
DECEASED, Appellee




On Appeal from the County Court at Law 
Washington County, Texas
Trial Court Cause No. 04-58




O P I N I O N
          In two issues, appellants, Kathleen Marie Kasparik Stoll and Mary Frances
Kasparik Evans, challenge the trial court’s order rendering summary judgment in
favor of appellee and upholding the earlier admission to probate of the 1993 will and
codicil of decedent, Frances K. Marburger. In two separate issues, appellants, Leslie
Loyce Kasparik Morris and Gordon Morris, challenge the trial court’s denial of their
application to probate decedent’s 1994 will. We affirm.
Background
          This case concerns the disposition of the estate of Frances K. Marburger. 
Frances and Elmo Marburger were married. They had no children together, but Elmo
had a son named James Marburger. Frances had two brothers, who were married, and
several nieces and nephews. Her brothers were Leslie J. Kasparik and
Edward F. Kasparik. 
          On November 5, 1993, Frances and Elmo executed reciprocal wills and
established a family trust (“the Marburger Family Trust”). They transferred almost
all of their assets to the trust, excepting certain personal property and items of a
nonprobate, contractual disposition, such as individual retirement accounts and life
insurance policies. James Marburger and Leslie J. Kasparik were initially named co-trustees of the Marburger Family Trust. After Leslie died around early 1994,
Edward F. Kasparik succeeded him as co-trustee of the Marburger Family Trust.
          Elmo died on January 3, 1994. By the terms of his will, the bulk of his estate
transferred to the Marburger Family Trust. According to the terms of the trust
agreement, the Marburger Family Trust was divided into two new trusts upon Elmo’s
death: the Frances K. Marburger Management Trust (“the Management Trust”) and
the Elmo G. Marburger Family By-Pass Trust (“the Bypass Trust”). On
February 7, 1994, Frances transferred what was formerly her one-half of the
community estate to the trust for administrative convenience.



          The trust agreement provided that, upon Frances’s death, one-half of the
Management Trust would be shared equally by eight named beneficiaries:
          1.       Edward F. Kasparik,
          2.       Leslie James Kasparik,
          3.       Leslie Loyce Kasparik Morris,
          4.       Raymond James Kasparik,
          5.       Kathleen Marie Kasparik [Stoll],
          6.       Melissa Kasparik,
          7.       Frances Helen Kasparik, and
          8.       Mary Frances Kasparik [Evans].

Absent from this list of beneficiaries were Frances’s niece and nephew, Karen L.
Henderson, appellee, and Edward N. Kasparik, who were the children of Frances’s
brother, Edward F. Kasparik.
          As to the other half of the Management Trust, Frances retained a special power
of appointment to members of a defined class, which could be exercised during her
lifetime or in her will.


 Karen L. Henderson and Edward N. Kasparik were members
of the defined class.
          After Elmo passed away, Karen and her father saw Frances two or three times
a month at her home in Brenham. They would visit, spend the weekend, take Frances
shopping and to the bank, and help with odd jobs. Karen testified that she loved her
aunt, but she said that there were occasions when she thought “Aunt Frances” did not
like her. Karen further testified that she knew that Frances did not always like Leslie
Loyce Morris, Rose Kasparik, or James Marburger. In describing the family’s
dynamics, Karen said, “You don’t know this family how they argue and fight . . . .”
          On June 8, 1994, Frances executed a codicil to her will, in which she included
Edward N. and Karen. Karen and her father, Edward F., were with Frances at the
time, having set up the meeting with the lawyer at Frances’s request. In her codicil,
Frances provided:
In a prior will of mine, dated January 28, 1983, I included as
beneficiaries or contingent beneficiaries of my estate my nephew,
EDWARD [N. KASPARIK]


, and my niece, KAREN KASPARIK
HENDERSON. They were subsequently not included in a Codicil to
that Will or in the Trust Agreement described above, and I wish each of
them to receive an amount of property equal to that which each of the
eight members of my family who is named in such Trust Agreement as
a beneficiary upon my death shall receive, assuming each survives me. 
Therefore, I appoint to EDWARD [N. KASPARIK] and to KAREN
KASPARIK HENDERSON, each an amount out of the property which
I have the power to appoint equal in value to one-tenth (1/10) of the
total amount to be distributed to members of my family (as described in
Section 5.1(b) of Article V of such Trust Agreement) after my death.
 
          Leslie Loyce Morris also visited her Aunt Frances. On July 21, 1994, Frances
executed a new will, which was drafted by an attorney named Michael Dear and
which all parties have referred to as the “Dear will.” In this will, Frances revoked “all
former Wills and Codicils made by me at any time heretofore,” and she bequeathed
everything to Leslie Loyce Morris and her husband, Gordon Morris. At trial, a letter
from Michael Dear, dated August 8, 1994, was admitted, which stated that the
original had been stolen. Dear advised Frances that “[i]f the original instruments
were stolen, you will need to sign new original copies in order for them to be
effective.” 
          In November 1994, while Karen and her father were present, Frances wrote a
note purporting to revoke the Dear Will: “I the undersigned want the “Will” drawn
by Michael B. Dear, att. at law, Palestine Texas, 75801 to be null & void. This will
is dated Aug. 8, 1994. /s/ Frances K. Marburger.”
          Frances Marburger died on March 5, 2004. On May 3, 2004, the 1993 will and
codicil were admitted to probate, on Karen’s father’s application. A copy of the Dear
will and Michael Dear’s affidavit appear in the clerk’s record, file stamped
March 17, 2006, but there is no indication of who filed this or for what purpose.
          On July 12, 2006, James H. Marburger and Rose Kasparik, as co-trustees of the
Management Trust, filed a declaratory judgment action.


 In this action, they sought
guidance on how to distribute the Management Trust assets, questioning the effect of
the Dear will and the subsequent handwritten revocation. In particular, the
co-trustees were concerned about the distribution of the Management Trust assets that
were subject to Frances’s power of appointment.
          On November 8, 2006, Kathleen Marie Kasparik Stoll and Mary Frances
Kasparik Evans (appellants) filed an “application to set aside the probate of a prior
will due to revocation by subsequent testamentary instrument . . . .” Kathleen and
Mary argued that the Dear will revoked all prior wills, and therefore Frances died
intestate.
          On January 12, 2007, Karen, her father, Kathleen, Mary, and the co-trustees
agreed to the following stipulations, which were filed with the trial court.
          1.       The “Dear [w]ill” was executed with statutory requirements and
due formalities of law and contained a revocation clause. The
“Dear [w]ill” was revoked subsequent to its execution.
 
          2.       The “Dear [w]ill” is not being offered for probate . . . .
 
          3.       The 1994 Codicil executed by Frances Marburger was delivered
to Edward Kasparik as Trustee of the Frances K. Marburger
Management Trust, created under the Elmo and Frances
Marburger Family Trust.
 
          4.       The County Court at Law of Washington County, Texas has
jurisdiction to consider and resolve the [pending] estate and trust
matters . . . . Karen and her father moved for summary judgment. They argued that both the
declaratory judgment action and Kathleen and Mary’s application to probate the Dear
will as an instrument of revocation were direct attacks on the trial court’s order
admitting the 1993 will and 1994 codicil to probate and were barred by the two-year
statute of limitations applicable to will contests.
          Kathleen and Mary filed a competing motion for summary judgment arguing
that because the Dear will was executed after the 1993 will and 1994 codicil, any suit
to admit it to probate would be subject to the four-year statute of limitations
applicable to the admission of wills to probate, not the two-year limitations period for
will contests. They also argued that the Dear will revoked the earlier will and codicil
upon its execution, and no subsequent revocation of the Dear will could revive the
1993 will and codicil.
          The trial court granted Karen’s and her father’s motion for summary judgment,
denied Kathleen’s and Mary’s motion for summary judgment, and ordered the
distribution of the Management Trust in accordance with certain percentages. The
trial court found the following facts:
          1.       [T]he “Dear” will dated July 21, 1994 is not being offered as a
valid will for probate but to contest the validity of the will dated
November 5, 1993, and codicil dated June 8, 1994, which were
admitted to probate on May 3, 2004.
 
          2.       [T]he first pleading constituting a suit to contest the validity of
the will and codicil was not filed until November 8, 2006. 
 
          3.       Probate Code Section 93 prevents the consideration of the “Dear”
will to invalidate the will and codicil previously admitted to
probate.

The trial court concluded that the 1993 will and the 1994 codicil were valid and that
Frances had validly exercised her power of appointment in the codicil.
          A month later, Leslie Loyce Morris and her husband, Gordon Morris, applied
to probate the Dear will. Karen


 opposed this, based on the two-year statute of
limitations and res judicata, arguing that the trustees’ declaratory judgment action
already addressed the Dear will.
          The trial court held a bench trial on the application to probate the Dear will.
During the course of the trial, the trial court was informed that there was a mistake
in its allocation of the Management Trust assets in the original summary judgment. 
The parties agreed that the trial court would correct that error.
          On May 3, 2007, the trial court wrote to the parties explaining that Leslie
Loyce and Gordon failed to prove that the will had not been revoked.The Court finds that evidence of the will being revoked was that the
original was not produced for probate, that the testator had advice from
counsel that she should execute a new will to replace the lost will and no
effort was made to execute a new will. Further evidence that the will was
revoked was the writing solely in the handwriting of testator dated
November 21, 1994 that she revoked the will dated July 21, 1994.
 
          The court also explained that the application was untimely, because it was not
filed within two years of the earlier probate. Finally, the trial court concluded that the
application to probate the Dear will was a will contest.
          The trial court signed two orders: (1) an order rendering a new summary
judgment, correcting the error regarding the distribution of the Management Trust
made in the February 2007 summary judgment; and (2) an order denying the
application to probate the Dear will.
          Kathleen and Mary appealed the summary judgment; Leslie Loyce and Gordon
filed appealed the order denying their application to probate the Dear will. In two
issues, Kathleen and Mary assert that the trial court erred in granting Karen’s motion
for summary judgment and in denying theirs. They argue that they were not barred
by limitations and that the Dear will revoked the 1993 will. Leslie Loyce and Gordon
bring two issues asserting that the trial court erred in denying their application to
admit the Dear will to probate. They argue that the court erred in concluding that
their application was a will contest barred by limitations and by failing to declare that
Frances died intestate based on the revocation of the 1993 will by the Dear will.
Summary Judgment
          We first consider Kathleen and Mary’s issues challenging the trial court’s order
granting summary judgment for appellee and denying summary judgment in their
favor. 
          We review a court’s order granting summary judgment de novo. Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is
proper when the movant proves that there is no genuine issue of material fact and that
she is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Cathey v.
Booth, 900 S.W.2d 339, 341 (Tex. 1995). A defendant is entitled to summary
judgment when she conclusively negates at least one of the essential elements of each
of the plaintiff’s causes of action or conclusively establishes all of the elements of an
affirmative defense. Cathey, 900 S.W.2d at 341. We review the evidence in the light
most favorable to the nonmovant, taking as true all evidence in its favor, indulging
every reasonable inference, and resolving any doubts in its favor. Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). “When, as here, both
sides move for summary judgment and the trial court grants one motion and denies
the other, we review the summary judgment proof presented by both sides and
determine all questions presented.” Alpert v. Riley, Nos. 01-06-00605-CV,
01-06-00505-CV, slip op. at 12, 2008 WL 4670169, *4 (Tex. App.—Houston [1st
Dist.] Oct. 23, 2008, no pet.).
          The parties stipulated to the facts, including that the 1994 Dear will was not
being offered for probate. The parties argued to the trial court, as they do on appeal,
whether or not Kathleen and Mary’s attempt to offer the Dear will as an instrument
of revocation was a time-barred will contest. 
          A will contest is a direct attack on the order admitting a will to probate and is
considered part of the probate proceeding. In re Estate of Blevins, 202 S.W.3d 326,
328 (Tex. App.—Tyler 2006, no pet.); In re Estate of Davidson, 153 S.W.3d 301, 304
(Tex. App.—Beaumont 2004, pet. denied); Estate of Morris, 577 S.W.2d 748, 752
(Tex. Civ. App.—Amarillo 1979, writ ref’d n.r.e.) (citing A & M College v. Guinn,
280 S.W.2d 373, 377 (Tex. Civ. App.—Austin 1955, writ ref’d n.r.e.)); see Stovall
v. Mohler, 100 S.W.3d 424, 427–29 (Tex. App.—San Antonio 2002, pet. denied)
(holding will contest barred by two-year statute of limitations because challenged
will, which was shown to be forgery, had been admitted to probate). A will contest
is not limited to a direct attack on the validity of a will at the time of its execution.


 
In Franks v. Chapman, the supreme court explained the purpose of the statute
providing for a will contest and statute of limitations as follows:
We are therefore of the opinion that it was the intention of the
legislature to give to persons interested in a will a remedy by which they
could test its validity, either for a want of those things essential under
the statute to the making of a will, or for the want of those requirements
necessary to clothe the probate court with power to make valid probate.
 
Franks v. Chapman, 61 Tex. 576 (Tex. 1884) (emphasis added). 
          The statute of limitations for a will contest is two years. Tex. Prob. Code
Ann. § 93 (Vernon 2003) (“After a will has been admitted to probate, any interested
person may institute suit in the proper court to contest the validity thereof, within two
years after such will shall have been admitted to probate . . . .”). Although suit to
contest a probated will must be filed within two years, the actual revoking instrument
need not be filed with the court as an exhibit within the same time period. Chambers
v. Chambers, 542 S.W.2d 901, 908 (Tex. Civ. App.—Dallas 1976, no writ) (holding
that revoking instrument need not be filed as exhibit within two years); Holliday v.
Smith, 422 S.W.2d 791, 795 (Tex. Civ. App.—Corpus Christi 1967, writ ref’d n.r.e.)
(holding that suit to contest probated will must be instituted within two years).
          Kathleen and Mary filed their “Application to Probate Will as an Instrument
of Revocation and to Set Aside Probate of Prior Will” on November 8, 2006, two
years and five months after the trial court’s order admitting the 1993 will and 1994
codicil to probate. In connection with the motion for summary judgment, appellants
stipulated that they were not offering the 1994 Dear will for probate. We hold that
Kathleen’s and Mary’s application was a will contest and was barred by the two-year
statute of limitations. We overrule issues one and two.
Order on Application to Probate the Dear Will
          In issue three, appellants Leslie Loyce and Gordon Morris challenge the trial
court’s order denying their application to admit the 1994 Dear will to probate, “on
grounds that their application was a will contest barred by limitations rather than a
§ 83(b) probate proceeding that was not time-barred.” In issue four, they argue that
the trial court erred in failing to declare intestacy under Probate Code section 83(b).
          A trial court’s ruling on a probate application is generally reviewed under an
abuse-of-discretion standard. In re Estate of Gaines, 262 S.W.3d 50, 55 (Tex.
App.—Houston [14th Dist.] 2008, no pet.); see In re Guardianship of Bayne, 171
S.W.3d 232, 235 (Tex. App.—Dallas 2005, pet. denied); see, e.g., In re Estate of
Robinson, 140 S.W.3d 801, 807 (Tex. App.—Corpus Christi 2004, pet. dism’d)
(reviewing order finding person unsuitable to serve as executor under an
abuse-of-discretion standard); Olguin v. Jungman, 931 S.W.2d 607, 610 (Tex.
App.—San Antonio 1996, no writ) (reviewing order finding person unsuitable to
serve as executor under abuse of discretion standard). The trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner without reference to any
guiding rules or principles. Cire v. Cummings, 134 S.W.3d 835, 838–39 (Tex. 2004). 
“The mere fact a trial judge may decide a matter within his discretionary authority in
a different manner than an appellate judge in a similar circumstance does not
demonstrate that an abuse of discretion has occurred.” Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985).
          To obtain probate of a will, an applicant must prove that the will was not
revoked by the testator. Tex. Prob. Code Ann. § 88(b)(3) (Vernon 2003). In its
May 3, 2007 letter to the parties, the trial court concluded that the Morrises did not
prove that the 1994 Dear will was not revoked by Frances. The trial court relied on
both the letter from Frances’s attorney regarding the need to execute a new will to
replace the lost will as well as the holographic writing that purported to revoke the
Dear will as evidence of revocation. The trial court’s order reflects that their
application to probate the Dear will “pursuant to Texas Probate Code § 83(b) is
DENIED.” Moreover, because the Morrises did not prove that Frances never revoked
the Dear will, their application could be construed only as a will contest. See Klein
v. Dimock, 705 S.W.2d 405, 407 (Tex. App—Fort Worth 1986, writ ref’d n.r.e.)
(holding that application to probate will could have been only will contest because
record in probate proceeding affirmatively proved that will being offered had been
revoked). Accordingly, we hold that the trial court did not abuse its discretion in
denying their application for probate and declining to declare that Frances died
intestate. We overrule issues three and four.
 
 
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Jim Sharp
                                                             Justice

Panel consists of Justices Taft, Bland, and Sharp.