Opinion issued July 31, 2025



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00953-CV

_____

## IN THE ESTATE OF MYRTLE DELL BROWN, DECEASED

---

**On Appeal from the County Court at Law No. 3**
**Fort Bend County, Texas**
**Trial Court Case No. 18-CPR-032114**

---

## MEMORANDUM OPINION

In this appeal, the Humane Society of the United States challenges the probate court's denial of its uncontested application to probate a copy of the October 1, 2009 will of Myrtle Dell Brown naming the Humane Society as her sole beneficiary (the "October 2009 will"). We initially affirmed the probate court's order, but the Supreme Court of Texas reversed. *See In re Estate of Brown*, 703 S.W.3d 52 (Tex.

App.—Houston [1st Dist.] 2022), *rev'd*, 704 S.W.3d 428 (Tex. 2024). It held that the unsworn, in-court statements of Brown's guardian, Catherine Wylie, constituted evidence that the October 2009 will could not be found after a reasonably diligent search. 704 S.W.3d at 436. The supreme court concluded that when Wylie's statements were considered, the Humane Society had established the cause of nonproduction of a will as a matter of law. *Id.*

The case was remanded for this Court to consider whether the Humane Society rebutted the presumption that the October 2009 will had been revoked. We conclude that it did.

We reverse the probate court's order and render judgment admitting the copy of the October 2009 will to probate.

## Background

The facts of this case are discussed at length in this Court's and the supreme court's prior opinions. The facts pertinent to the issue on remand are as follows.

### A. Events preceding the application to probate

Brown was 84 years old when she executed the October 2009 will. Vickey Lee and Lesa Smith, the witnesses to Brown's execution of the will, attested in the self-proving affidavit that Brown had declared to them "that such instrument was her last will and testament and had willingly made and executed it as her free act and deed and she executed same as such and wanted each of them to sign it as a witness."

2

Shortly after Brown executed the October 2009 will, she fell and was hospitalized. On October 15, 2009, attorney David Easterling sent a letter to the probate court requesting that a guardianship proceeding be initiated for Brown.[1]

On October 19, 2009, the probate court appointed Wylie to serve as guardian ad litem for Brown. In a certificate of medical examination filed with the court on December 13, 2009, Mark Kunik, M.D., M.P.H., reported that Brown was totally incapacitated secondary to dementia. The probate court established the guardianship of Brown on February 8, 2010, and appointed Wylie as Brown's permanent guardian. The guardianship continued until Brown's death in 2018.

## B.    Applications before the probate court

After Brown died in 2018, Beverly Eriks, as executor, filed an unopposed application for probate of a copy of the October 2009 will. At the probate court's direction, Wylie filed an application for determination and declaration of heirship. The Humane Society then filed its own application for probate of the October 2009 will.

---

[1]    Some of the information relied on by the probate court appears only in the records of the guardianship proceeding. *See In re Guardianship of Myrtle Dell Brown, an Incapacitated Person*, Cause No. 09-CPR-022328, in County Court at Law No. 3, Fort Bend County, Texas; *see also In re Estate of Brown*, 704 S.W.3d 428, 431–32 n.2 (Tex. 2024) (noting that Easterling's letter filed in guardianship proceeding was not included in appellate record but was referenced in hearings below and by probate court in its findings of fact and conclusions of law).

Brown's only known heirs were Annabelle Powell, her cousin, and Joyce Brehmer, a deceased cousin's daughter.[2] Powell executed a waiver of citation, in which she acknowledged that she received and read a copy of the Humane Society's application for probate and a copy of the October 2009 will, "ha[d] read both and underst[ood] them," and "enter[ed] [her] appearance in said cause for all purposes, and waive[d] the issuance, service, and return of [c]itation upon [her]." And Powell averred:

> Had [Brown] died intestate, I would have been entitled to inherit from the [e]state, as I am the first cousin and sole surviving heir. I understand that I do not take assets under the [w]ill as . . . Brown[] named the Humane Society . . . to take everything in the [w]ill. I agree that the probate of a copy of the [w]ill may be taken up and considered by the Harris County Probate Court without further notice to me.

Brehmer also executed an affidavit waiving citation, in which she likewise acknowledged that she understood her rights and agreed that the probate court could consider the case without further notice to her.

C.    **Evidence before the probate court**

1.    **Brown was upset with Powell, who had been named sole beneficiary in Brown's prior will.**

Brown had executed a will in August 2009 that left all assets of her estate to Powell and named Powell as the executor. In September 2009, Brown fell and was

---

2    Brehmer died before the probate proceeding occurred.

4

hospitalized. When she was discharged, she returned to her home and hired full-time caregivers.

Eriks testified that she met Brown in 2009 when one of Brown's caregivers called her to "come and help" because "[t]hey saw irregularities." The caregiver accused another caregiver of stealing from Brown. She also told Eriks that she heard Brown say she wanted to remove Powell from her will.

Eriks stated that Brown was upset with Powell. Brown explained to Eriks that Powell had stolen from Brown while Brown was in "rehab"[3] "and continued to steal." Powell had fired Brown's nurse, housekeeper, and longtime friend, brought in other caregivers for Brown, and "caused all these problems."

In her December 18, 2009 report to the probate court, Wylie noted that Brown told her that Powell had attempted to assist Brown at one time but indicated that she had problems with Powell. Wylie believed that Brown loved Powell, but Wylie didn't know any of the background about how the August and October 2009 wills got drafted.

## 2. Brown was competent when she executed the October 2009 will.

Eriks testified that she told the caregiver to find Brown a lawyer. The caregiver found attorney John Yow and made an appointment. The caregiver called

---

[3]     Although not entirely clear from the record, it seems likely that Brown was referring to physical rehabilitation following her September 2009 fall.

Eriks and told her that she needed to be there, so Eriks went to Yow's office. She sat outside the room where Yow and Brown were meeting.

The October 2009 will, drafted by Yow and signed by Brown, revoked all prior wills, named the Humane Society as the sole distributee of Brown's estate, and named Eriks as independent executor. According to Yow, he met with Brown alone to make sure he understood how she wished to dispose of her estate, and he "got[] the information to write into the [October 2009] will" from Brown.[4] Yow would not have let Brown execute the October 2009 will if he believed she lacked capacity. Lee and Smith, the witnesses to Brown's will, also testified that they believed Brown was of sound mind on the date she executed the will.

### 3. Brown's testamentary intent

When asked if she knew why Brown would have chosen the Humane Society as the beneficiary in the October 2009 will, Eriks explained that Brown "loved animals and she had a precious cat named Callie." Wylie confirmed that Brown "had a three-legged cat named Callie" that she "loved dearly," and she recounted the efforts to find a home for the cat when Brown was moved to the assisted living facility. Wylie stated that because Brown "loved that cat, love[d] animals," maybe it was "very befitting" if her estate "end[ed] up going to the Humane Society."

---

[4]     Yow appeared at the hearing on the Humane Society's motion to reconsider and for new trial.

Wylie generally described Brown as "feisty." She noted that Brown took pride in having had a career as an executive secretary at Exxon. While Brown did not mean to be "hateful or argumentative," she said "exactly what she thought about you and it didn't matter what words came out of her mouth." Wylie initially had Brown remain in her home. She eventually moved Brown into an assisted living facility "because she was aggressive and fighting and had a lot of issues with caregivers."[5]

The probate court denied the application to probate a copy of the October 2009 will and denied the motion to reconsider its ruling. The Humane Society appealed. This Court initially affirmed the probate court's order, and the Humane Society sought review in the Supreme Court of Texas. The supreme court granted the Humane Society's petition and reversed, determining that this Court erred in excluding from its evidentiary review the unsworn, in-court statements of Wylie, and holding there was sufficient evidence as a matter of law to satisfy the Estates Code's requirement that the applicant establish the cause of nonproduction of the original will.[6] The supreme court then remanded the case for us to consider whether the Humane Society rebutted the presumption of revocation and, if necessary, the burden of proof that applies to such a rebuttal in this uncontested proceeding.

---

[5] The guardianship record shows that Brown was moved out of her home to an assisted living facility sometime before late September 2010.

[6] *See* TEX. EST. CODE § 256.156(b)(1).

7

**Standard of Review**

We review a trial court's ruling on a probate application for an abuse of discretion. *In re Estate of Setser*, No. 01-15-00855-CV, 2017 WL 444452, at *2 (Tex. App.—Houston [1st Dist.] Feb. 2, 2017, no pet.) (mem. op.); *Stoll v. Henderson*, 285 S.W.3d 99, 106 (Tex. App.—Houston [1st Dist.] 2009, no pet.). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner without reference to guiding rules and principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004); *Woods v. Kenner*, 501 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2016, no pet.). It likewise abuses its discretion if it incorrectly construes or applies the law, because a trial court has no discretion to misconstrue or misapply the law. *In re Estate of Setser*, 2017 WL 444452, at *2. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not establish that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

Under the abuse-of-discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion. *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). We give the

trial court's fact findings the same weight as a jury's verdict. *Thompson v. Smith*, 483 S.W.3d 87, 93 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

When a party attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, the party must show on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When we consider a legal-sufficiency challenge, we "must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Id.* Only if there is no evidence to support the finding will we examine the entire record to determine whether the contrary proposition is established as a matter of law. *Dow Chem.*, 46 S.W.3d at 241. We must uphold the fact finder's verdict if more than a scintilla of evidence supports the judgment. *W & T Offshore, Inc. v. Fredieu*, 610 S.W.3d 884, 898 (Tex. 2020). We will sustain a challenge to the legal sufficiency of the evidence only if (1) there is a complete lack of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a scintilla of evidence offered to prove a vital fact, or (4) the opposite of the vital fact is conclusively established. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004).

When a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, the party must show that the adverse finding is

so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem.*, 46 S.W.3d at 242.

We are mindful that the trial court, as the fact finder in a bench trial, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *McKeehan v. Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692, 698 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Thus, the trial court may choose to believe one witness and disbelieve another. *McKeehan*, 554 S.W.3d at 698; *see also City of Keller*, 168 S.W.3d at 819. It is the fact finder's role to resolve conflicts in the evidence, and we may not substitute our judgment for that of the fact finder. *See McKeehan*, 554 S.W.3d at 698.

### Non-Revocation

The Humane Society asserts that the probate court erred in concluding there was insufficient evidence to show that Brown did not revoke the October 2009 will.

Applications to probate a copy of a lost will must show that the original will was not subsequently revoked. TEX. EST. CODE § 256.152(a)(1). To make this showing, the applicant first must prove the cause of the will's nonproduction. *Id.* § 256.156(b). "Second, if the will was last seen in the testator's possession or in a place to which she had ready access, the applicant must overcome a rebuttable presumption that the testator revoked the will." *In re Estate of Brown*, 704 S.W.3d

10

at 434; *see In re Estate of Glover*, 744 S.W.2d 939, 940 (Tex. 1988); *Woods v. Kenner*, 501 S.W.3d 185, 197 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

The supreme court noted in its opinion that "overcoming the presumption of revocation is a low hurdle because it may be rebutted with circumstantial evidence 'contrary to the presumption.'" *In re Estate of Brown*, 704 S.W.3d at 435 (quoting *In re Estate of Capps*, 154 S.W.3d 242, 245 (Tex. App.—Texarkana 2005, no pet.)). Circumstantial evidence sufficient to overcome the presumption of revocation may include evidence that the testator continued to have affection for the will's beneficiaries.

In *In re Estate of Capps*, for example, the evidence was sufficient to show non-revocation where the original will was not found with the decedent's other important documents, but the decedent had given a copy of the will to the major devisees referenced in the will, had publicly announced her intentions regarding property disposition, and continued to have affection for the devisees named in the will. 154 S.W.3d at 244; *see also In re Estate of Wilson*, 252 S.W.3d 708, 713 (Tex. App.—Texarkana 2008, no pet.) (endorsing *Capps* to hold that testator's recognition of will's continued validity and continued affection for chief beneficiary in absence of evidence tending to show testator's dissatisfaction with will or any desire to cancel or change will, was sufficient to rebut presumption of revocation of missing original will). The testator's temperament may also factor into whether circumstantial

evidence showed any change in feelings toward her intended beneficiaries. *See In re Estate of Capps*, 154 S.W.3d at 246 (noting decedent had not expressed contrary intention regarding her disposition despite being type of person who would have informed others if she had revoked or changed her will).

Evidence that the testator lost possession, custody, or control over her important documents may also contribute to a finding of non-revocation. The supreme court explained that "a plausible explanation for the will's disappearance, such as through natural disaster or fraudulent destruction" may also rebut the presumption of revocation. *In re Estate of Brown*, 704 S.W.3d at 435 (citing *In re Estate of Standefer*, 530 S.W.3d 160, 165 (Tex. App.—Eastland 2015, no pet.)); *see also In re Estate of Burrell*, No. 09-14-00345-CV, 2016 WL 5400260, at *3 (Tex. App.—Beaumont Sept. 22, 2016, no pet.) (mem. op.) (holding circumstantial evidence rebutted presumption of revocation where safe kept in decedent's home was found open with contents missing after decedent had been away from her home due to illness). And because a testator must have testamentary capacity to revoke her will, a showing that the testator lost capacity following execution of the lost or destroyed will may also factor into whether the evidence rebuts the presumption of revocation. *See Dean v. Garcia*, 795 S.W.2d 763, 764 (Tex. App.—Austin 1989, writ denied) (per curiam) (citing *McIntosh v. Moore*, 53 S.W. 611, 613–14 (Tex. Civ. App.—San Antonio 1899, no writ)).

Here, the evidence showed that shortly before executing the October 2009 will, Brown was upset with Powell, the sole beneficiary of her August 2009 will, and she asked to speak to a lawyer about changing her will. After consulting with Yow, she executed the October 2009 will, revoking all prior wills and naming the Humane Society as the sole beneficiary of her estate.

The undisputed evidence shows that Brown had testamentary capacity when she executed the October 2009 will. Shortly after Brown executed the October 2009 will, she fell and was hospitalized. Wylie was appointed guardian ad litem on October 19, 2009. In February 2010, after a medical examination determined Brown was totally incapacitated, Wylie was appointed as guardian of Brown's person and estate. By February 2010, at the latest, then, Brown was legally unable to unilaterally revoke her will. *See Dean*, 795 S.W.2d at 764.

No evidence shows that Brown changed her opinion about who should benefit from her estate between October 2009 and February 2010. Both Eriks and Wylie testified that Brown loved her cat, and the evidence of Brown's affection toward her cat and animals supported her selection of the Humane Society as her sole beneficiary. Eriks and Wylie also both testified that Brown had complained to them about having problems with Powell. Because Brown was "feisty" and would say "exactly what she thought about" someone, this testimony shows that she did not

13

have a change of heart about removing Powell as her beneficiary and revoking her August 2009 will. *See In re Estate of Capps*, 154 S.W.3d at 244–46.

We conclude that the evidence is sufficient to overcome the presumption of revocation and no evidence shows that Brown manifested any intent to revoke her October 2009 will during the relevant time period. Thus, we hold the probate court erred in concluding the contrary.[7]

## Conclusion

We reverse the probate court's order denying the application to probate and render judgment admitting the copy of Brown's October 1, 2009 will to probate.


Clint Morgan
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

---

[7] Because the circumstantial evidence uniformly supports non-revocation, we need not consider what burden of proof applies for determining whether the applicant rebutted the presumption of revocation. *See In re Estate of Brown*, 704 S.W.3d at 437.