**Opinion issued August 4, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-01029-CV**
**NO. 01-14-01030-CV**

————————————

**TARRIS WOODS, Appellant**

**V.**

**SANDRA T. KENNER AND CHARLES E. TWYMON, JR., Appellees**

**On Appeal from the Probate Court**
**Galveston County, Texas**
**Trial Court Case Nos. PR-0073664 and PR-0075144**

## O P I N I O N

Appellant, Tarris Woods, challenges the probate court's orders admitting a

copy of a lost will and granting a petition for bill of review[1] brought by appellees,

---

[1]     *See* TEX. PROB. CODE ANN. § 31 (Vernon 2003) (currently at TEX. EST. CODE ANN.
        § 55.251 (Vernon 2014)).  Effective January 1, 2014, the Texas Probate Code was

Sandra T. Kenner and Charles E. Twymon, Jr. ("Charles Jr."), to set aside a prior judgment declaring heirs and order appointing administrators for the estate of the decedent, Charles Twymon, Sr. In regard to the order granting the bill of review, Woods, in four issues, contends that the trial court erred in denying his special exceptions, granting the petition for bill of review, and removing the previously appointed administrators.[2] In regard to the order admitting the copy of the lost will, Woods, in four issues, contends that the evidence is insufficient to support the probate court's finding that the decedent did not revoke his will and the probate court erred in adjudicating the merits as to Charles Jr. and ruling that Kenner is not a party to the prior proceeding to declare heirs.[3]

We affirm.

## Background

The decedent died on July 7, 2012 and is survived by his two children, Charles Jr. and Robin Twymon, and his two step-children, Kenner and Leon Toussant.

---

repealed and recodified as the Texas Estates Code. *See* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, §§ 1.01–4.03, 2011 Tex. Gen. Laws. 1901, 1901–2095; Act of May 26, 2009, 81st Leg., R.S., ch. 680, §§ 1–12, 2009 Tex. Gen. Laws 1512, 1512–1732. Probate Code section 31 was recodified, in substantially similar form, as sections 55.251 and 55.252 of the Estates Code. *See* TEX. EST. CODE §§ 55.21–.252; *Valdez v. Hollenbeck*, 465 S.W.3d 217, 221 n.1 (Tex. 2015). We apply the provisions of the Probate Code in effect at the time the probate court signed the orders at issue. *See Valdez*, 465 S.W.3d at 221 n.1.

[2] Appellate cause number 01-14-01029-CV; trial court case number PR-0073664.

[3] Appellate cause number 01-14-01030-CV; trial court case number PR-0075144.

Because Charles Jr. and Robin could not locate the decedent's will after he died, they filed an application for a determination of heirs and for appointment as co-administrators of his estate. The probate court appointed an ad litem to represent any unknown heirs and, on September 10, 2012, signed a "Judgment Declaring Heirship," finding that the decedent had died intestate and declaring Charles Jr. and Robin to be the sole heirs. The probate court also signed an "Order Granting Letters of Administration," appointing Charles Jr. and Robin as independent co-administrators of the decedent's estate and authorizing the issuance of letters of administration. After the probate court closed the estate, Charles Jr. and Robin signed a deed transferring certain real property that they had inherited from the estate to Woods.[4]

Subsequently, a copy of a 1999 will of the decedent was located. In his will, the decedent devised all of his property to all four of his children and step-children "to share equally." On May 12, 2014, Charles Jr. and Kenner filed an application in the probate court to admit the will "as a [m]uniment of [t]itle."[5] And, on July 30,

---

[4]    The record contains Woods's affidavit, in which he testifies that he "knew [the] decedent from 1980 until his death on July 7, 2012" and was "familiar with the family." The facts regarding his relationship to the parties and his acquisition of the property at issue are not further developed in the record.

[5]    A court may admit a will to probate as a muniment of title if it finds that there are no unpaid debts owing by the estate of the testator, excluding debts secured by liens on real estate, or no necessity for an administration of the estate. TEX. PROB. CODE ANN. § 89C(a) (Vernon 2013). The purpose of this "limited form of probate" is to "provide continuity in the chain of title to estate properties by placing the will on

2014, they filed a petition for a bill of review, seeking to set aside the probate court's previous "Judgment Declaring Heirship."

Woods filed special exceptions to Charles Jr. and Kenner's petition, arguing that they, in support of the petition, had erroneously relied on Texas Estates Code section 55.251 because the issues in their petition are governed by former Probate Code section 31.[6] Woods also argued that they were "not entitled to relief as currently pled" because they "were all represented" in the prior heirship proceeding and failed to "show any error [in] the September 10, 2012 Judgment Declaring Heirship" or "any extrinsic fraud."

At a hearing on Charles Jr. and Kenner's application and petition, and Woods's special exceptions, Penny Pope testified that the decedent, prior to his death, was her client, and she "prepared" a will for him in 1999. She identified a copy of the will referenced in court as the will that she had prepared for the decedent. Pope further testified that in 2008, Hurricane Ike caused "six feet of water" to enter the decedent's house and destroy its contents. Although the decedent had, in 2011, mentioned to her that he was "thinking about redoing his will," he never did. After the decedent's death, Pope learned that attorney Billy Williams had filed the

---

the public record." *Matter of Estate of Hodges*, 725 S.W.2d 265, 271 (Tex. App.—Amarillo 1986, writ ref'd n.r.e.).

[6]   *See* TEX. PROB. CODE ANN. § 31 (recodified as TEX. EST. CODE ANN. § 55.251) (authorizing bill of review in probate proceedings).

4

previous heirship proceeding on behalf of Charles Jr. and Robin. Once Pope located her copy of the decedent's will, she gave it to Williams.

Kenner testified that in 2008, when she and the decedent returned to his house after Hurricane Ike, she saw water "up to the ceiling fan" inside the house. She explained that the house was "gutted . . . out" for "about two weeks" for repairs and all of the household contents, including "all the paperwork," was "saturated" and "thrown away." Kenner noted that although she and the decedent had talked about his will, they had not discussed whether it had been destroyed. After she received a copy of the decedent's will from Williams, she and Charles Jr. filed the instant action.

Dale Minix testified that he had known the decedent for over twenty years prior to his death and, from 2008 to 2012, was "his primary caregiver." The decedent had never indicated to him that he had lost his will or planned to execute a new will. And Minix noted that he would have known if the decedent had executed a new will. Minix explained that after the probate court had closed the decedent's estate, Charles Jr. and Robin sold him one of the houses and a "couple of cars" from the estate. And they signed a deed transferring property to him and to Woods.

The probate court admitted into evidence the portion of Charles Jr.'s testimony from the September 10, 2012 hearing in which he stated that Pope was the decedent's attorney and had prepared his will; the decedent's will "got washed away

5

in [Hurricane] Ike"; and, after the decedent's death, Pope told him that she did not have a copy of the decedent's will; however, she later "found a copy of the will."

During the hearing, the probate court orally denied Woods's special exceptions as untimely filed. Then, on November 7, 2014, it signed an "Order Granting Application to Correct Error," granting Charles Jr. and Kenner a bill of review and vacating its September 10, 2012 "Judgment Declaring Heirship" and "Order Granting Letters of Administration." The probate court also signed an "Order Probating Last Will and Testament as a Muniment of Title," admitting the copy of the decedent's 1999 will to probate "as a Muniment of Title only." It further directed:

> this Order shall constitute sufficient legal authority to all persons owing money, having custody of any property, or acting as registrar or transfer agent of any evidence of interest, indebtedness, property, or right belonging to the Estate [the decedent], and to persons purchasing from or otherwise dealing with the Estate of [the decedent], for payment or transfer to the person described in said Will as entitled to receive the particular asset without administration; and further, that the persons entitled to receive a particular asset be further entitled to deal with and treat the properties to which they are entitled in the same manner as if the record title thereto were vested in their name.

In its findings of fact and conclusions of law, the probate court found that although, despite an "exercise of reasonable diligence" immediately after the decedent's death, a will "could not be located," "a true and correct copy" of the will had since been found and was "entitled to probate as a Muniment of Title"; the decedent had executed a will on April 30, 1999, "with the formalities and solemnities

6

and under the circumstances required by law to make it a valid [w]ill]"; and the will was "self-proved according to law" and had not been revoked. It further found that Charles Jr. and Kenner had filed a petition for a bill of review "show[ing] error in the Judgment Declaring Heirship," which required that its judgment be vacated and replaced with an order probating the will of the decedent.

**Bill of Review**

In his second issue regarding his challenge to the probate court's order granting Charles Jr. and Kenner's petition for a bill of review, Woods argues that the probate court erred in granting the petition because they did not "make a prima facie showing of a meritorious claim or defense."

A bill of review is a separate, independent suit, brought by a party to a former action, to set aside a final judgment that is no longer subject to a motion for new trial or appealable. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010); *Wolfe v. Grant Prideco, Inc.*, 53 S.W.3d 771, 773 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see* TEX. R. CIV. P. 329b(f). We review a trial court's ruling on a petition for bill of review for an abuse of discretion, indulging every presumption in favor of the court's ruling. *Xiaodong Li v. DDX Grp. Inv., LLC*, 404 S.W.3d 58, 62 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference to guiding rules and principles. *Id.*

7

A probate court's order determining heirship constitutes a final judgment that may be appealed or reviewed within the same time limits and in the same manner as any other judgment in a probate matter. TEX. PROB. CODE ANN. § 55 (Vernon 2003). Once the appellate deadlines have expired, an interested person may attack the judgment by bill of review. *Id.* § 31 (Vernon 2003). Ordinarily, a bill-of-review plaintiff must plead and prove (1) a meritorious defense to the underlying cause of action, (2) which the plaintiff was prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on its own part. *Valdez v. Hollenbeck*, 465 S.W.3d 217, 226–27 (Tex. 2015) (elements of "equitable bill of review"). Here, however, Charles Jr. and Kenner filed a petition for a *statutory* bill of review. *See* TEX. PROB. CODE ANN. § 31. "Statutory bills of review are more scarce, existing predominantly in the probate and guardianship contexts." *Valdez*, 465 S.W.3d at 226–27; *see In re Estate of Rogers*, 322 S.W.3d 361, 363–64 (Tex. App.—El Paso 2010, no pet.) (statutory bill of review may be brought to set aside prior order determining heirship in order to probate will).

At the time pertinent to this proceeding, the Texas Probate Code authorized a bill of review in probate proceedings as follows:

> Any person interested may, by a bill of review filed in the court in which the probate proceedings were had, have any decision, order, or judgment rendered by the court . . . revised and corrected on showing error therein; but no process or action under such decision, order, or

8

judgment shall be stayed except by writ of injunction, and no bill of review shall be filed after two years have elapsed from the date of such decision, order, or judgment.

TEX. PROB. CODE ANN. § 31. "In contrast to equitable bills of review, section 31 has been interpreted to require a showing of 'substantial error' in a prior decision, order, or judgment." *Valdez*, 465 S.W.3d at 226–27. A statutory bill of review is not subject to the limitations or requirements of an equitable bill of review. *See McDonald v. Carroll*, 783 S.W.2d 286, 288 (Tex. App.—Dallas 1989, writ denied); *Jackson v. Thompson*, 610 S.W.2d 519, 522 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ).

Here, Charles Jr. and Kenner, in their petition for a statutory bill of review, were not required to "make a prima facie showing of a meritorious claim or defense," which is an element of an equitable bill of review. *See McDonald*, 783 S.W.2d at 288; *see also Valdez*, 465 S.W.3d at 226–27. Accordingly, we hold that the probate court did not err in granting them a bill of review on the ground that they did not "make a prima facie showing of a meritorious claim or defense."

We overrule Woods's second issue regarding his challenge to the probate court's order granting Charles Jr. and Kenner's petition.

**Special Exceptions**

In his first issue regarding his challenge to the probate court's order granting Charles Jr. and Kenner's petition, Woods argues that the probate court erred in

9

denying his special exceptions as untimely filed, under the Local Rules for the Probate Court of Galveston County, because the local rules impermissibly shorten the period prescribed by the Texas Rules of Civil Procedure. *See* Galveston (Tex.) Prob. Ct. Loc. R. 2.8; TEX. R. CIV. P. 3a, 90, 91.

A trial court has broad discretion in ruling on special exceptions. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). And we will not disturb its ruling on appeal absent an abuse of discretion resulting in harm. *See Martin v. Clinical Pathology Labs., Inc.*, 343 S.W.3d 885, 891 (Tex. App.—Dallas 2011, pet. denied); *Slentz v. Am. Airlines, Inc.*, 817 S.W.2d 366, 368 (Tex. App.—Austin 1991, writ denied). We review a trial court's determination of legal questions de novo. *Martin*, 343 S.W.3d at 891. We construe special exceptions liberally in favor of the pleader. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *Thottam v. Joseph*, No. 01-13-00377-CV, 2015 WL 1632454, at *8 (Tex. App.—Houston [1st Dist.] Apr. 9, 2015, pet. denied) (mem. op.).

The Texas Rules of Civil Procedure[7] provide that in a non-jury case, as here, a party who wishes to complain about a defect or obscurity in a pleading is required to identify the defect or obscurity in writing and to bring the special exception to the

---

[7] The rules of civil procedure apply in probate matters, except where a rule conflicts with a specific provision of the Probate Code. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex. 1983) (applying former Probate Code); *Wojcik v. Wesolick*, 97 S.W.3d 335, 337 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see also* TEX. R. CIV. P. 2.

10

trial court's attention "before a judgment is signed." *See* TEX. R. CIV. P. 90, 91. Otherwise, any complaints about such defects and obscurities are waived. TEX. R. CIV. P. 90. "No time period provided by [the Texas Rules of Civil Procedure] may be altered by local rules[.]" TEX. R. CIV. P. 3a(2). And "no local rule, order, or practice of any court, other than local rules and amendments which fully comply with all requirements of this Rule 3a, shall ever be applied to determine the merits of any matter." TEX. R. CIV. P. 3a(6).

Local rule 2.8(a) provides, in pertinent part, as follows:

> Any party or Counsel filing special exceptions . . . shall request and obtain a hearing on them at least 30 days prior to the trial date or as soon as possible after the pleading is filed if the pleading is filed within 30 days of the trial date. Any such matters not heard are waived.

Galveston (Tex.) Prob. Ct. Loc. R. 2.8(a).

Charles Jr. and Kenner filed their petition on July 30, 2014. Woods filed his special exceptions on October 23, 2014 and requested a hearing for October 27, 2014, the day of the bill-of-review hearing. At the beginning of the bill-of-review hearing, Woods presented his special exceptions. The probate court heard argument on each of his issues and overruled them as follows:

> THE COURT: So, having said all that, the special exceptions that were on file, they weren't filed within the 30 days according to the local rules.
>
> [Woods]: Your Honor, the special exceptions were filed in compliance with Rule 90 of the Texas Rules of Civil Procedure.

11

THE COURT: Okay. But they were not for the local rules.

And so, in conclusion, I think the special exception is denied. We just need to move forward on the case. So, I probably need to sign an order to that effect.

The probate court subsequently signed an order granting Charles Jr. and Kenner's petition on November 7, 2014. Thus, Woods did file his special exceptions and bring them to the probate court's attention "before a judgment [was] signed." *See* TEX. R. CIV. P. 90, 91.

Even were we to conclude that Woods had timely filed his special exceptions under the Texas Rules of Civil Procedure and the probate court erred in applying the local rule, Woods has not shown that any harm resulted from the error. *See Singh v. Citibank (S. Dakota), N.A.*, No. 03-10-00408-CV, 2011 WL 1103788, at *7 (Tex. App.—Austin Mar. 24, 2011, no pet.) (mem. op.) (no harm in trial court's denial of special exceptions and citing TEX. R. APP. P. 44.1); *Swinford v. Allied Fin. Co. of Casa View*, 424 S.W.2d 298, 301 (Tex. Civ. App.—Dallas 1968, writ dism'd) ("We have examined each of the special exceptions and find that the same are without merit so that any possible error on the part of the court in failing to pass upon the same would be harmless."); *see also K.J. v. USA Water Polo, Inc.*, 383 S.W.3d 593, 604 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("Presuming for the sake of argument that the trial court abused its discretion [in sustaining special exceptions], we conclude that any such error did not probably cause the rendition of

an improper judgment and did not probably prevent the appellants from properly presenting this case on appeal."). Here, the probate court did not summarily dismiss Woods's special exceptions as untimely filed; rather, it heard extensive argument on the merits of each of his issues before overruling them. *Cf. Approximately $1,589.00 v. State*, 230 S.W.3d 871, 874 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (trial court erred, in part, by refusing to hear motion as untimely filed under local rule, which conflicted with rules of civil procedure).

Woods, in his special exceptions and at the hearing, argued that Charles Jr. and Kenner, in their petition, erroneously relied upon "Estates Code section 55.251" because former Probate Code section 31 applies to this case. The probate court, at the hearing, concluded that section 55.251 and section 31 are substantively the same. In 2014, the Texas Legislature recodified section 31 as section 55.251, using substantively similar language.[8] *See* TEX. EST. CODE ANN. § 55.251 (Vernon 2014)

---

[8]  Section 31 provides as follows:

Any person interested may, by a bill of review filed in the court in which the probate proceedings were had, have any decision, order, or judgment rendered by the court, or by the judge thereof, revised and corrected on showing error therein; but no process or action under such decision, order or judgment shall be stayed except by writ of injunction, and no bill of review shall be filed after two years have elapsed from the date of such decision, order, or judgment.

TEX. PROB. CODE ANN. § 31 (Vernon 2003).

Section 55.251 provides as follows:

(a) An interested person may, by a bill of review filed in the court in which the probate proceedings were held, have an order or judgment rendered by the court

(formerly TEX. PROB. CODE ANN. § 31); *Smalley v. Smalley*, 436 S.W.3d 801, 806 n.7 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Both sections provide for relief by bill-of-review. And Woods, in his special exceptions, pointed to no substantive defect or obscurity in that regard.

Woods also argued that Charles Jr. and Kenner, in their petition, failed to "show any error [in] the September 10, 2012 Judgment Declaring Heirship." In a statutory bill of review proceeding, the movant must show a "substantial error" in a prior decision, order, or judgment. *Valdez*, 465 S.W.3d at 226–27. The error need not appear on the face of the record and may be proved at trial. *Nadolney v. Taub*, 116 S.W.3d 273, 278 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Hoover v. Sims*, 792 S.W.2d 171, 173 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Here, Charles Jr. and Kenner, in their petition, asserted that their request to probate the decedent's will required the "correction or revision" of the probate court's order declaring the heirs of the decedent. And the probate court, at the hearing, concluded that it had erred in its prior judgment in stating that the decedent had died intestate because he had in fact executed a will. With exceptions not applicable here, a

---

revised and corrected on a showing of error in the order or judgment, as applicable.

(b) A bill of review to revise and correct an order or judgment may not be filed more than two years after the date of the order or judgment, as applicable.

TEX. EST. CODE ANN. § 55.251 (Vernon 2014).

"proceeding to declare heirship" does not apply when, as here, a decedent dies testate. *See* TEX. PROB. CODE ANN. § 48 (Vernon 2003); *McMahon v. Naylor*, 855 S.W.2d 193, 194–95 (Tex. App.—Corpus Christi 1993, writ denied) (court may not determine heirs where decedent dies testate and no property omitted from will).

Woods further argued that Charles Jr. and Kenner, in their petition, "failed to show extrinsic fraud." The probate court, at the hearing, concluded that no such showing was required. Again, a statutory bill of review is not subject to the requirements of an equitable bill of review, and no showing of extrinsic fraud is required. *See McDonald*, 783 S.W.2d at 288; *Jackson*, 610 S.W.2d at 522; *see also Haisler v. Coburn*, No. 10-09-00275-CV, 2010 WL 2953372, at *2 (Tex. App.— Waco July 28, 2010, pet. denied) ("[o]nly extrinsic fraud" will support *equitable* bill of review).

Finally, Woods asserted that Kenner had been "represented" in the prior proceeding. However, the probate court, at the hearing, correctly concluded that Kenner was not required to show that she was not a party to the prior proceeding. *See Fernandez*, 315 S.W.3d at 504; *Wolfe*, 53 S.W.3d at 773; *see* TEX. R. CIV. P. 329b(f).

Accordingly, we hold that the trial court did not err in denying Woods's special exceptions.

We overrule Woods's first issue regarding his challenge to the probate court's order granting Charles Jr. and Kenner's petition.

## Removal of Administrators

In his third and fourth issues regarding his challenge to the probate court's order granting Charles Jr. and Kenner's petition, Woods argues that the trial court erred in "remov[ing] [Charles Jr.] and Robin J. Twymon as co-independent administrators" because Charles Jr. and Kenner did not "meet [their] burden of proof in showing a violation" of Texas Probate Code section 149C and "there existed a necessity for the continued administration of the estate."

Section 149C governs removal of an "independent executor" who cannot be located or who is shown to have "misapplied or embezzled . . . property committed to [his] care." TEX. PROB. CODE ANN. § 149C (Vernon 2013). Nothing in the record suggests that the probate court "removed" Charles Jr. and Robin for cause. *See id.* (order of removal shall state cause of removal); *Kappus v. Kappus*, 284 S.W.3d 831, 835 (Tex. 2009). Rather, the probate court vacated its prior "Judgment Declaring Heirship," in which it had erroneously declared that the decedent had died intestate, and "Order Granting Letters of Administration," in which it had appointed Charles Jr. and Robin as independent co-administrators.

Further, the testimony from the bill-of-review hearing shows that the administration was complete and the "court had closed the estate." The probate court

16

found that there was no need for further administration, and it admitted the copy of the decedent's will to probate as a muniment of title.

A court may probate a will as a muniment of title if the court finds that there is no need for an administration of an estate. TEX. PROB. CODE ANN. § 89C(a); *In re Estate of Kurtz*, 54 S.W.3d 353, 355 (Tex. App.—Waco 2001, no pet.) ("Probating a will as a muniment of title provides a means to probate a will quickly and cost-efficiently when there is no need for administration of the estate."). When a court admits a will to probate as a muniment of title, the court does not issue letters testamentary to an executor or appoint an administrator.[9] *See Kurtz*, 54 S.W.3d at 355. Thus, the probate court did not, as asserted by Woods, remove Charles Jr. and Robin as administrators.

---

[9]    In admitting a will to probate as a muniment of title, a trial court need not issue letters testamentary to an executor or appoint an administrator because its order constitutes:

> sufficient legal authority to all persons owing any money to the estate of the decedent, having custody of any property, or acting as registrar or transfer agent of any evidence of interest, indebtedness, property, or right belonging to the estate, and to persons purchasing from or otherwise dealing with the estate, for payment or transfer, without liability, to the persons described in such will as entitled to receive the particular asset without administration. The person or persons entitled to property under the provisions of such wills shall be entitled to deal with and treat the properties to which they are so entitled in the same manner as if the record of title thereof were vested in their names.

TEX. PROB. CODE ANN. § 89C(a) (Vernon 2013).

We overrule Woods's third and fourth issues regarding his challenge to the probate court's order granting Charles Jr. and Kenner's petition.

## Failure to Appear

In his first issue regarding his challenge to the probate court's order admitting a copy of the decedent's will, Woods argues that the probate court, in admitting the copy, "exceeded its jurisdiction and/or abuse[d] it[s] inherent power to control the disposition of cases" because it "adjudicated the merits on behalf of [Charles Jr.], who failed to appear for trial." Woods asserts that a "judgment on the merits should not be made until . . . [Charles Jr.] has had his day in court."

"Any party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court." TEX. R. CIV. P. 7. Here, contrary to Woods's assertion, the record shows that Charles Jr. appeared at the hearing on his application to admit the will through his counsel, Thomas W. McQuage. Thus, the trial court did not err in adjudicating the merits of the case on behalf of a party who did not appear.

We overrule Woods's first issue regarding his challenge to the probate court's order admitting a copy of the decedent's will.

## Sufficiency of the Evidence

18

In his second and third issues regarding his challenge to the probate court's order admitting a copy of the decedent's will, Woods argues that the evidence is legally and factually insufficient to support the probate court's finding that the decedent did not revoke the will because "Kenner[,] as the proponent of the will[,] failed to show by [a] preponderance of the evidence that the will [was not] revoked by the decedent."

In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them, just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, he must demonstrate that no evidence supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). We will sustain a legal-sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal-sufficiency review, a "court must consider evidence in the light

19

most favorable to the verdict, and indulge every reasonable inference that would support it." *Id.* at 822. The term "inference" means:

> In the law of evidence, a truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved . . . .

*Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 400 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.) (quoting BLACK'S LAW DICTIONARY 700 (5th ed. 1979)).

If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (internal quotations omitted). However, if the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, the trier-of-fact must be allowed to do so. *City of Keller*, 168 S.W.3d at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within th[e] zone of reasonable disagreement." *Id.*

In conducting a factual-sufficiency review, we review all of the evidence in a neutral light and will reverse only if the evidence supporting the finding is so weak

or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong or manifestly unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). In a bench trial, the trial court is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Zenner v. Lone Star Striping & Paving L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.* If we determine that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.*

A party seeking to probate a copy of a will, rather than the original, must prove the will "in the same manner as provided" for an attested written will or holographic will. *See* TEX. PROB. CODE ANN. § 85 (Vernon 2003); *Bracewell v. Bracewell*, 20 S.W.3d 14, 26 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The "same amount and character of testimony" is required as that necessary "to prove a written will produced in court." *See* TEX. PROB. CODE ANN. § 85. The proponent must also

21

prove "the cause of [the] non-production" of the will in a manner "sufficient to satisfy the court that it cannot by any reasonable diligence be produced." *Id.*; *see In re Estate of Capps*, 154 S.W.3d 242, 244 (Tex. App.—Texarkana 2005, no pet.). Further, the contents of the will "must be substantially proved by the testimony of a credible witness who has read the will, has heard the will read, or can identify a copy of the will." *See* TEX. PROB. CODE ANN. § 85; *see also Garton v. Rockett*, 190 S.W.3d 139, 145 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

When an original will cannot be located and was last seen in the testator's possession, a presumption arises that the testator destroyed the will with the intent of revoking it. *Brown v. Traylor*, 210 S.W.3d 648, 662 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Hibbler v. Knight*, 735 S.W.2d 924, 927 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e). The proponent must overcome this presumption by a preponderance of the evidence. *In re Estate of Glover*, 744 S.W.2d 939, 940 (Tex. 1988). This burden can be met with evidence of circumstances contrary to the presumption or with evidence that some other person fraudulently destroyed the will. *Brown,* 210 S.W.3d at 662. Evidence that the decedent recognized his will's continued validity and had continued affection for the primary beneficiary of his will, without evidence that he was dissatisfied with the will or had any desire to change or cancel it, is sufficient proof of circumstances contrary to the presumption.

22

*Id.*; *In re Estate of Standefer*, No. 11-14-00221-CV, 2015 WL 5191443, at *3 (Tex. App.—Eastland Aug. 21, 2015, no pet.).

Here, Woods challenges the probate court's finding that the will "was not revoked by the [d]ecedent." Pope testified that she drafted a will for the decedent in 1999. And she identified the copy of the will in court as the will that she had prepared for the decedent in 1999. Pope further testified that during Hurricane Ike in 2008, "six feet of water" entered the decedent's home and destroyed its contents. She noted that when she and the decedent went to his house to clean it after the hurricane, "water was up to the ceiling fan." "[A]ll the paperwork" in the decedent's house was "saturated," and "[e]verything was thrown away." Charles Jr. also testified that Pope, who was the decedent's attorney, prepared his will, which "got washed away in [Hurricane] Ike." *See In re Estate of Capps*, 154 S.W.3d at 245 (although "original will's absence [when last seen in testator's possession] creates a rebuttable presumption of revocation . . . that presumption can be overcome by proof and circumstances contrary to the presumption").

Further, although Pope testified that in 2011, the decedent mentioned to her that he was "thinking about redoing his will," he never did. Kenner testified that the decedent had talked with her about his will and had "never" indicated to her that it was to be destroyed. And Minix also testified that the decedent had never indicated that he had lost his will or planned to execute a new will. Minix further noted that

23

he would have known if the decedent had executed a new will. "The testimony of a witness that, to her knowledge or belief, the testator did not revoke the will has been held sufficient evidence of nonrevocation to support probate of [a] will." *Capps*, 154 S.W.3d at 245; *see Brown*, 210 S.W.3d at 675–76; *Bryant v. Hamlin*, 373 S.W.2d 837, 840 (Tex. Civ. App.—Dallas 1963, writ ref'd n.r.e.).

Viewing the evidence in the light most favorable to the probate court's findings and indulging every reasonable inference that would support them, we conclude that the probate court could have reasonably concluded that the decedent did not revoke his will. *See In re Estate of Perez*, 324 S.W.3d 257, 261–62 (Tex. App.—El Paso 2010, no pet.); *see also City of Keller*, 168 S.W.3d at 822. Further, viewing the evidence in a neutral light, the evidence supporting the probate court's finding that the decedent did not revoke his will is not so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. *See Brown*, 210 S.W.3d at 662; *see also Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, we hold that the evidence is legally and factually sufficient to support the probate court's finding that the decedent did not revoke his will. *See In re Estate of Catlin*, 311 S.W.3d 697, 700–01 (Tex. App.—Amarillo 2010, pet. denied) (evidence legally and factually sufficient to support finding testator's original will could not be procured by any reasonable diligence and not revoked).

Accordingly, we overrule Woods's second and third issues regarding his challenge to the probate court's order admitting a copy of the decedent's will.

**Prior Proceeding**

In his fourth issue regarding his challenge to the probate court's order admitting a copy of the decedent's will, Woods argues that the probate court erred in concluding that Kenner "was not a party to the Determination of Heirship" because she "took part in meetings and discussions surrounding the September[] 2012 hearing," "had an attorney . . . represent her in the September[] 2012 action," and "requested affirmative relief." However, Kenner's status as a party to the September 10, 2012 judgment, which the probate court vacated on November 7, 2014, is not before us.

Accordingly, we overrule Woods's fourth issue regarding his challenge to the probate court's order admitting a copy of the decedent's will.

**Frivolous Appeals**

In regard to both Woods's challenge to the probate court's order granting his petition and its order admitting a copy of the decedent's will, Charles Jr. and Kenner have filed a "Motion for Rule 45 Damages," in which they contend that Woods's appeal is frivolous and request that this Court award them their appellate attorney's fees. *See* TEX. R. APP. P. 45 (damages for frivolous appeals in civil cases).

We may award just damages to a prevailing party if we objectively determine, after considering "the record, briefs, or other papers filed in the court of appeals," that an appeal is frivolous. *Id.*; *Smith v. Brown*, 51 S.W.3d 376, 380–81 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). An appeal is frivolous when the record, viewed from the perspective of the advocate, does not provide reasonable grounds for the advocate to believe that the case could be reversed. *Smith*, 51 S.W.3d at 381. The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation. *Id.* And rule 45 does not require the Court to award just damages in every case in which an appeal is frivolous. *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

After a review of the record, briefing, and other papers filed in this Court, we deny Charles Jr. and Kenner's request for damages. *See* TEX. R. CIV. P. 45; *Smith*, 51 S.W.3d at 381.

## Conclusion

We affirm the orders of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

26