

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00245-CV

_____

IN THE GUARDIANSHIP OF JAMES ALTON TITUS, AN INCAPACITATED
PERSON

On Appeal from Probate Court No. 1
Tarrant County, Texas
Trial Court No. 2018-GD00180-1

Before Sudderth, C.J.; Wallach and Walker, JJ.
Opinion by Chief Justice Sudderth

# OPINION

In seventeen issues, Appellant Deborah Kay challenges the probate court's denial of her plea to the jurisdiction and the granting of a bill of review. Because we hold that the court erred by denying Kay's plea to the jurisdiction, we reverse and render.

## Background

James Alton Titus created an inter vivos trust in 2003. The trust provided that it could be altered or amended at any time by Titus, and in fact, it was amended on several occasions over the years. The last amendment prior to the events that gave rise to this dispute—the First Amendment to the Second Restatement of the Titus Irrevocable Trust Dated June 24, 2015—occurred on May 11, 2017, and in that amendment Deborah Kay, Titus's friend, business associate, and personal caregiver, was appointed co-trustee by Titus to serve with him.

On July 20, 2018, Titus's daughter, Lana Swenson, filed an Application for the Appointment of a Temporary Guardian alleging that Titus was an incapacitated person with impaired judgment causing him to become easily confused. The probate court appointed Martin A. Rechnitzer as Titus's attorney ad litem and thereafter appointed Guardianship Services, Inc. as temporary guardian.

In its order, the court found that there was substantial evidence that Titus was an incapacitated person and that alternatives to guardianship to avoid the need for the appointment of a temporary guardian had been "considered and determined not to be

2

feasible." The order bestowed various specific powers on the temporary guardian and removed from Titus the "power to execute any and all legal documents or contracts." While the order purported to strip Titus of his right to execute legal documents and contracts, it did not confer that power on the temporary guardian.

The next day, the court appointed Cary Schroeder as guardian ad litem and made a finding that there was "probable cause to believe" that Titus was incapacitated. But less than two weeks later, Titus signed documents prepared by attorney-ad-litem Rechnitzer amending the trust and designating Simmons Bank as its sole trustee.[1]

However, at the time Titus signed the documents, the temporary guardianship was still in place. At no time prior to Titus's signing the documents did Rechnitzer and Schroeder apply to the court to have the temporary guardianship dismissed, to

---

[1] As Rechnitzer explained in a letter sent to the attorneys for Kay, Swenson, and Simmons Bank, he had met with Titus several times, and aside from Titus's "significant physical disabilities, primarily his hearing and vision," Rechnitzer found Titus to be "alert, cognizant of his situation and surroundings," with "very keen" mental acuity. According to Rechnitzer, at one of their meetings, Rechnitzer pitched to Titus an idea that he and Schroeder had devised to amend the trust again to change the trustee designation "so that [Simmons Bank] would be the sole Trustee and that Mr. Titus would resign as Trustee." In the letter, Rechnitzer reported that Titus had "reacted very positively to the proposal and directed [Rechnitzer] to prepare any necessary documents for his signature." Without any advance notice to Kay, the co-trustee of the trust at the time, some days later, Rechnitzer prepared the necessary paperwork, and Rechnitzer and Schroeder presented it to Titus for signature. Titus signed the amendment changing the trustee designation to Simmons Bank, and Rechnitzer assured the recipients of the letter that, in his opinion, Titus had "more than sufficient capacity to understand the meaning of what was proposed to be done, the import of the documents, and the process of placing [Simmons Bank] in the position as sole Trustee of the Trust."

3

restore any powers to Titus, or to authorize anyone to execute trust-related documents on his behalf.

Just over a month later, Schroeder filed his Report of Guardian Ad Litem, in which he reported that:

- Titus was "substantially unable to provide for his own safety and [] protect his assets from exploitation";

- According to the Physician's Certificate of Medical Examination, Titus had been diagnosed by Dr. Mark Sanders with dementia, was currently receiving treatment with a dementia medication, and was totally incapacitated with "no possibility for improvement";

- Schroeder had an "ongoing concern that someone could convince Mr. Titus to make additional changes to the Trust";

- Dr. Sanders had noted that "there may be significant memory losses as well as physical constraints of age, loss of vision, and loss of hearing [affecting Titus's] ability to manage his own finances and provide for himself";

- Titus's "reliance on others for his daily needs, as well as to manage his finances, places him at a significant risk of exploitation and undue influence"; and

- Schroeder was concerned about the possibility of "undue influences from people around [Titus]."

On the same date, Schroeder filed an Application for Appointment of Permanent Guardian of the Person and Estate, which referred to Titus as "an incapacitated person" and which provided that his rights should be "fully limited," including not only as to personal decisions regarding residence, the right to vote, and the ability to obtain a driver's license, but also as to the "right to make changes to the

4

Titus Revocable Trust." Schroeder verified the application, averring that he had "read and examined" it and that "all the allegations contained therein [were] true and correct." The court never granted this application.

The next day, on September 19, 2018, Schroeder filed a Motion to Extend Temporary Guardianship Pending Contest, pointing out that the temporary guardianship that had "provided protect[ion] to [Titus] from possible undue influence or exploitation [would] expire on September 22, 2018" and requesting that the court extend the Order of Appointment of Temporary Guardian. Although Kay initially opposed the extension, her attorney approved the Agreed Order Extending Appointment of Temporary Guardian, signed by the court on September 21, 2018.

In that extension order, the court ordered that the temporary guardianship "shall continue to be effective and enforced for a period up to and including October 5, 2018." The temporary guardianship order expired on October 5, 2018, and thereafter Titus's personal affairs and finances were conducted pursuant to the terms of a Rule 11 agreement signed by Schroeder, Rechnitzer, and Kay's attorney.

Titus died on April 29, 2019. On May 13, 2019, the court signed an Order on Final Application for Payment of Fees and Expenses of Attorney Ad Litem. And, on May 15, 2019, the court dismissed as moot Schroeder's Application for Appointment of Permanent Guardian of the Person and Estate.

Five months later, on October 11, 2019, Simmons Bank filed a Petition for Bill of Review[2] alleging error in the Order Appointing Temporary Guardian. Simmons complained that because the order did not specifically grant the temporary guardian the right to sign contracts or legal instruments, it could not restrict Titus's right to sign contracts or legal instruments. Tex. Est. Code Ann. § 1251.001(b) (providing that when a temporary guardian is appointed, the proposed ward "retains all rights and powers that are not specifically granted to the person's temporary guardian by court order"). Claiming error in removing Titus's right to contract and sign legal instruments without bestowing that right upon the temporary guardian, the bill of review sought correction of the order "to remove the limitation of Titus's ability to execute legal documents and contracts."

Kay filed a plea to the jurisdiction challenging Simmons Bank's standing to seek a bill of review, but the plea was denied. In separate orders, both signed on July 7, 2020, the court granted the bill of review and issued a Revised and Corrected Order Appointing Temporary Guardian. In the corrected order, by omitting the provision removing Titus's power "to execute any and all legal documents or contracts," the court retroactively restored that power to Titus, thus restoring his power to execute

---

[2]Simmons Bank sought a statutory bill of review pursuant to Section 1056.101 of the Texas Estates Code, which allows a probate court to correct "substantial error" in a guardianship order. A statutory bill of review differs from the perhaps more familiar equitable bill of review in that it does not require, among other things, a showing of extrinsic fraud or a meritorious defense. *See Woods v. Kenner*, 501 S.W.3d 185, 191 (Tex. App.—Houston [1st Dist.] 2016, no pet).

the documents prepared by Rechnitzer changing the trustee designation to Simmons Bank.

## Jurisdiction

In her eighth and part of her ninth issues, Kay argues that Simmons Bank had no standing to bring the statutory bill of review.[3] We agree.

Standing to bring a statutory bill of review is governed by Section 1056.101 of the Texas Estates Code. It provides that an "interested person" may seek to have an order corrected by bill of review on a showing of error in the order or judgment. *Id.* § 1056.101. Section 1002.018 defines an "interested person" as:

(1) an heir, devisee, spouse, creditor, or any other person having a property right in or claim against an estate being administered; or

(2) a person interested in the welfare of an incapacitated person.

*Id.* § 1002.018.

Simmons Bank argues that it was an interested person for two reasons: (1) as the residuary devisee of Titus's will, it had a property right in or claim against an estate being administered, and (2) it was a person interested in the welfare of Titus, an incapacitated person.

---

[3]Because we dispose of this appeal on jurisdictional grounds, we do not reach Kay's other issues. *See* Tex. R. App. P. 47.1.

7

The bank's first argument lacks merit. Whether or not Simmons Bank was a residuary devisee of Titus's will, at the time the bank filed its Petition for Bill of Review, there was no guardianship "estate being administered."

As the Supreme Court has repeatedly instructed us, the goal of statutory construction is to "determine and give effect to the Legislature's intent," and the Legislature's intent "is generally reflected in the statute's plain language." *Zanchi v. Lane*, 408 S.W.3d, 373, 376 (Tex. 2013). In *Zanchi*, the Supreme Court consulted, among other sources, *Webster's Dictionary*, to determine the plain meaning of the word "party." *Id.* at 378 (citing the third edition of *Webster's International Dictionary*). Here, we also consult *Webster's Dictionary* to determine the meaning of the statute's plain language, particularly the word "being."

According to *Webster's Dictionary*, the word "being" is the present participle of the verb "to be." *Being*, WEBSTER'S NEW INTERNATIONAL DICTIONARY 199 (3d. ed. 2002). Thus, "being," as used in Texas Estates Code Section 1002.018(a), refers to a matter in the present tense, not in the past. Here, the temporary guardianship expired on October 5, 2018, and the "Final" order for payment of attorney ad litem fees and expenses was signed on May 13, 2019. Schroeder's Application for Appointment of Permanent Guardian of the Person and Estate was dismissed as moot two days later,

8

on May 15, 2019. Thus, in October of 2019, when Simmons Bank filed its Petition for Bill of Review, Titus's estate was no longer "being administered."[4]

The bank's second argument—that it was "[a] person interested in the welfare of an incapacitated person"—can likewise be summarily rejected. Tex. Est. Code Ann. § 1002.018(2). At the time Simmons Bank filed its Petition for Bill of Review, Titus was dead. Therefore, it cannot be said that the bank at the time had any interest in his welfare.

Because Simmons Bank was not an "interested person" as defined by Texas Estates Code Section 1002.018, it lacked standing to file its Petition for Bill of Review. *See A&W Indus., Inc. v. Day*, 977 S.W.2d 738, 741 (Tex. App.—Fort Worth, 1998, no pet.) ("[F]or any person to maintain a suit, it is necessary that he have standing to litigate the matters in issue."). Thus, we hold that the court erred by denying Kay's plea to the jurisdiction. Kay's eighth and part of her ninth issues are sustained.

## Conclusion

Having sustained Kay's eighth and part of her ninth issues, we hold that Simmons Bank had no standing to file its Petition for Bill of Review. Accordingly, we reverse and render judgment that the order granting the bill of review and the corrected order are void due to lack of jurisdiction, that these orders are vacated, and that the bill of review proceeding is dismissed.

---

[4]Nor was there a reason for the estate to be administered, as Titus was dead.

9

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered:  September 30, 2021