**In the GUARDIANSHIP OF Eva Manning BAYNE, an Incapacitated Person.**

**In re Estate of Eva Manning Bayne, Deceased.**

No. 05–04–00291–CV.

Court of Appeals of Texas, Dallas.

April 25, 2005.

Rehearing Overruled Sept. 23, 2005.

Emil Lippe, Jr., Lippe & Associates, P.C., Dallas, for Appellant.

David S. Mallard, Terrell, for Appellee.

Before Justices BRIDGES, O'NEILL, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

William R. Bayne appeals three orders from the guardianship and probate proceedings in favor of the American National Bank of Texas (the Bank) concerning the guardianship and the estate of his mother, Eva Manning Bayne (Ward and Deceased, respectively). We reverse in part and affirm in part.

## BACKGROUND

In 2000, William Bayne applied to have his mother declared incapacitated and to have a guardianship imposed on her person and estate. The county court granted the application, declared Mrs. Bayne to be incapacitated, imposed a temporary guardianship on her person and estate, and appointed the Bank the temporary guardian of her estate. In an order signed March 28, 2003, the county court made the temporary guardianship permanent and appointed Bayne the permanent guardian of the Ward's estate, but the court also declared that the Bank "shall continue to serve as the Temporary Guardian of the Ward and continue to manage all assets belonging to the Ward . . . until such time as this Court . . . relieves such Temporary Guardian of its duties."

In June 2003, Mrs. Bayne died. Bayne filed her will for probate and was appointed independent executor of her estate. In August 2003, the county court signed an order agreed to by the Bank and Bayne ordering the Bank to transfer all the assets of the Ward's estate to Bayne as independent executor of the Deceased's estate except for $11,500 cash, which the Bank could retain "pending resolution of certain disputed expenditures, and/or further orders of this court." The Bank followed the order and transferred all of the Ward's estate to Bayne except $11,500.

In November 2003, the Bank applied in both the guardianship and probate proceedings for the county court to transfer over $100,000 of the Deceased's estate back into the Ward's estate.

On December 15, 2003, the court signed an order in the guardianship proceeding authorizing and directing the Bank "and any other party having possession or control of the funds of the ward" to pay the Bank's claim for $5668.32 and attorney Jerry Huff's claim for $8283.

On January 21, 2004, the Bank applied to the county court in both proceedings for authority to pay Huff $2953.50 from the remaining assets in the Ward's estate. That same day, the county court signed an order in both proceedings approving payment of $2953.50 to Huff, found there were ample funds in the Ward's estate to pay

this amount, that "payment of same would be in the best interests of this estate," and ordered the Bank as temporary guardian to pay Huff that sum. Bayne filed a notice of appeal concerning this order. The guardianship and probate proceedings were then transferred to the county court at law.

On January 29, 2004, the Bank applied in both proceedings for authority to pay attorney David Mallard $6191.10 for his fees through January 16, 2004; the Bank requested that the court order either it or Bayne as executor of the Deceased's estate to pay Mallard. On March 8 and 15, 2004, the county court at law heard evidence and testimony concerning the November 2003 application to transfer assets and the January 29, 2004 application to pay Mallard's fees. On March 16, 2004, the county court at law signed an order in both proceedings requiring Bayne as independent executor of the Deceased to "immediately re-transfer to the custody and control" of the Bank as temporary guardian of the Ward $20,000 of the money previously transferred from the Bank as guardian to Bayne as independent executor. The court also signed an order in both proceedings for the Bank as guardian "and/or" Bayne as independent executor to pay Mallard $6191.10 "out of the funds belonging to the Estate of Eva Manning Bayne, _____." Bayne filed notices of appeal from both of these orders.

## STANDARD OF REVIEW

■ A court's rulings on guardianship and probate applications are generally reviewed under the abuse of discretion standard. *See, e.g., Epstein v. Hutchison*, No. 01–02–01274–CV, —— S.W.3d ——, ——, 2004 WL 2475220, at *1 (Tex.App.-Houston [1st Dist.] Nov. 4, 2004, pet. denied) (review of attorney's fees incurred by guardian); *In re Estate of Robinson*, 140 S.W.3d 801, 807 (Tex.App.-Corpus Christi 2004, pet. dism'd) (review of order finding person unsuitable to serve as executor). A court abuses its discretion when its actions are unreasonable or arbitrary or are without reference to any guiding rules or principles. *Saldarriaga v. Saldarriaga*, 121 S.W.3d 493, 497 (Tex.App.-Austin 2003, no pet.). However, when an issue involves only a question of law, we review that determination de novo. *Epstein*, —— S.W.3d at ——, 2004 WL 2475220, at *1.

## JANUARY 21, 2004 ATTORNEY'S FEES ORDER

Bayne argues the January 21, 2004 order granting the Bank's application filed that same day to pay Huff $2953.50 is void because Bayne received no notice of the application before the order was signed, he had no opportunity to be heard, and he had a right to a jury trial on the issue. He also asserts the award is void because the Ward was deceased, an independent executor of the Deceased's estate had been appointed, and the Bank had not applied to the independent executor for payment of the claim as required by the probate code. Finally, he argues the application did not follow the correct claims procedures.

### Notice

■ Bayne argues the order is void because he received no notice of the application for attorney's fees before the court granted it. Section 632 of the guardianship provisions in the probate code provides, "A person does not need to be cited or otherwise given notice in a guardianship matter except in situations in which this chapter expressly provides for citation or the giving of notice." Tex. Prob.Code Ann. § 632(a) (Vernon 2003). Nothing in the relevant chapter of the probate code indicates that notice is statutorily required for a guardian's application to pay attorney's

fees incurred in administering the ward's estate. Bayne had the right to file a request to "be notified of any or all specifically designated motions, applications, or pleadings filed by any person." *Id.* § 632(j). Nothing in the record shows Bayne filed a request for notice of any application for payment of attorney's fees; accordingly, he was not entitled to notice.

Bayne asserts he had to be entitled to notice because he was entitled to a jury trial under section 643 of the probate code, and he argues that the right to a jury trial is meaningless without notice. Section 643 provides, "A party in a *contested* guardianship proceeding is entitled, on request, to a jury trial." *Id.* § 643 (emphasis added). The record does not show the guardianship proceeding on the application for Huff's fees was contested; thus, the record does not support Bayne's argument that he had a statutory right to a jury trial. To the extent Bayne asserts he could not contest the proceeding without notice, we observe he had no right to notice unless he filed a request for notice under section 632(j).

### Death of the Ward

■ Bayne also argues the Ward's death ended the guardianship, and what had been the Ward's estate immediately became the Deceased's estate. Because there was an independent executor of the Deceased's estate, no payment from the Deceased's estate could be made without first applying to the independent executor as required by section 298 of the probate code. *Id.* § 298(a). We disagree.

The Ward's estate did not cease to exist at the Ward's death. Section 745 provides, "A guardianship of the estate of a ward shall be settled when: ... (2) an incapacitated ward dies...." *Id.* § 745(a)(2). The settlement of the estate requires the guardian to file an "account for final settle-

ment of the estate" and to deliver the estate to a person legally entitled to it. *Id.* §§ 749, 758. However, contrary to Bayne's argument, those are not the only actions the guardian may take. Section 746 provides,

> Before the guardianship of a person or estate of a ward is closed on the death of a ward, the guardian, subject to the approval of the court, may make all funeral arrangements, pay for the funeral expenses out of the estate of the deceased ward, and pay all other debts out of the estate. If a personal representative of a deceased ward is appointed, the court shall on the written complaint of the personal representative cause the guardian to be cited to appear and present a final account as provided in Section 749 of this code.

*Id.* § 746. If, at death, a ward's estate became the deceased's estate, requiring presentment of all claims to the personal representative of the deceased, then section 746 would be rendered meaningless. As written, however, section 746 permits the guardian to pay any of the remaining debts of the ward's estate before transferring the estate to the deceased's representative, but only with the court's approval to do so, and it provides a remedy for the representative of the deceased should he allege misapplication of property by the guardian. In this case, the Bank, as temporary guardian, applied for payment of one of the debts, Huff's fees, out of the Ward's estate, and the court approved that expenditure.

### Claims Procedures

■ Bayne also argues the application "was totally deficient in failing to follow the claims procedures set forth in subpart G ... of the Probate Code." Subpart G has twenty-six sections containing at least that many requirements, but Bayne does not

specify which provisions were not followed. Regardless, however, section 789 provides that defects of form or claims of insufficiency of exhibits or vouchers are deemed waived unless the objection to the form or sufficiency is presented in writing and filed with the county clerk within thirty days of the presentment of the claim. *Id.* § 789 (Vernon 2003). The record does not show Bayne filed any such objections with the county clerk. Thus, to the extent Bayne complains of the defects in the form or sufficiency of the exhibits supporting the attorney's-fees claim, they are waived. To the extent Bayne may be complaining of any lack of authentication of the claim, section 792 permits a guardian to pay an unauthenticated claim the guardian believes is just, "but the guardian ... shall be liable for the amount of any payment of the claim if the court finds that the claim is not just." *Id.* § 792. In this case, the record does not show Bayne has challenged the claim in the lower court as "not just."

We conclude Bayne's arguments that the January 21, 2004 judgment is void lack merit.

## MARCH 16, 2004 TRANSFER ORDER

■ Bayne next asserts the court lacked authority to order him to re-transfer assets from an independently administered probate estate back to a guardianship proceeding. We agree.

■ In an independently administered estate, the court's involvement in the administration of the estate is limited to the specific provisions of the probate code. *Collins v. Baker*, 825 S.W.2d 555, 556 (Tex. App.-Houston [14th Dist.] 1992, orig. proceeding). The probate code sets out the specific actions the court may take when an independent executor has been appointed. *See* TEX. PROB.CODE ANN. §§ 148–150, 152. None of those provisions permits the court to order the independent executor to "re-transfer" or "pay" funds from the Deceased's estate to the Ward's estate. Those assets had been transferred from the Ward's estate to the Deceased's estate through an agreed order on August 28, 2003 pursuant to section 747(a). *See id.* § 747(a) (Vernon Supp.2004–05). The court's order to "re-transfer" a portion of those assets back to the guardianship was without any basis in the law. The Bank argues that section 5A gives the court broad authority over the administration of estates, but section 5A also provides that it "shall not be construed so as to increase permissible judicial control over independent executors." *Id.* § 5A(b).

We conclude the court's March 16, 2004 order requiring Bayne, as independent executor, to "re-transfer" or "pay" assets to the Bank as temporary guardian was an abuse of discretion. Accordingly, we vacate the order.

## MARCH 16, 2004 ORDER TO PAY ATTORNEY'S FEES

■ Bayne also appeals the March 16, 2004 order requiring the Bank as guardian "and/or" Bayne as independent executor to pay Mallard $6191.10.

The probate code sets out the procedure for obtaining payment of a debt owed by a deceased's estate with an independent administration. The claimant must timely file a claim with the independent executor. *Id.* §§ 146, 298 (Vernon 2003). If the claim is rejected, the claimant may bring suit against the independent executor, and if the claimant prevails, the judgment is executed against the estate. *Id.* § 147. In this case, neither the Bank nor Mallard presented a claim to Bayne as independent executor, and neither brought suit against Bayne as independent executor. Instead, the Bank filed an application for payment in the guardianship and probate proceed-

ings. The court's order requiring the Deceased's estate to pay Mallard's attorney's fees constitutes an unwarranted intrusion into the independent administration of the estate. Accordingly, we set aside the order to the extent it orders Bayne, as independent executor, to pay Mallard.

Bayne also argues that the court abused its discretion by ordering the Bank to pay Mallard. Bayne first asserts that on March 16, 2004, the Bank was no longer the temporary guardian because the letters of guardianship had expired. "All letters of guardianship expire one year and four months after the date of issuance unless renewed." *Id.* § 659(b). "Whenever temporary letters expire ..., the court shall immediately enter an order requiring the temporary appointee to deliver the estate remaining in the temporary appointee's possession to the person who is legally entitled to the possession of the estate. The temporary appointee shall be discharged." *Id.* § 879. In this case, the letters of temporary guardianship were issued to the Bank on December 5, 2001, so they expired on April 5, 2003. However, the court did not immediately order the Bank to deliver the estate "to the person who is legally entitled to the estate," and the court did not discharge the Bank. Despite the expiration of the letters, the Bank's authority as temporary guardian continued.

■ Bayne also asserts the Bank's temporary guardianship ceased when Bayne was appointed permanent guardian. Section 875 provides, "The term of the temporary guardian expires ... on the date a permanent guardian the court appoints for the proposed ward qualifies to serve as the ward's guardian." *Id.* § 875(*l*) (Vernon Supp.2004–05). The court's order appointing Bayne permanent guardian, however, specifically provided that the Bank's temporary guardianship was to continue and that the Bank was to "manage all assets," accept funds, and pay the expenses for the Ward until the court approved a final account filed by the Bank and relieved it of its duties. The order did not require the Bank to submit its final account within any time period. The record does not show the Bank has filed its final account or that the court has relieved the Bank of its duties as temporary guardian. Despite the use of the title "permanent guardian," this order did not appoint Bayne permanent guardian because, with the Bank managing all the Ward's assets, the primary responsibility of a guardian of the estate was placed with the Bank, not Bayne. Thus, notwithstanding section 875(*l*), the Bank's temporary guardianship did not cease with Bayne's purported appointment to permanent guardian.

■ Bayne also asserts the court lacked authority in the guardianship proceeding to enter the order to pay Mallard's fees because, Bayne argues, after the death of the ward, the court is without jurisdiction to take any action other than ordering the guardian to make a final accounting and conclude the guardianship, citing *Carroll v. Carroll*, 893 S.W.2d 62 (Tex.App.-Corpus Christi 1994, no writ).

In *Carroll*, the Corpus Christi Court of Appeals considered the jurisdiction of a county judge in a guardianship proceeding to order, one year after the ward's death, the sale of land in the ward's estate to pay the ward's debt to the nursing home in which she resided for twenty-one years before her death. *Carroll*, 893 S.W.2d at 63–64. After reviewing various provisions of the probate code, the court stated, "We believe that the Probate Code is clear. A guardianship ceases to exist upon the death of the ward and the guardian is required only to exercise those powers necessary to settle and close the guardianship as a prerequisite to his discharge." *Id.*

at 68. We disagree with Corpus Christi Court's interpretation. The probate code makes clear that a guardianship may be "kept open after the death of the ward." *See* TEX. PROB.CODE ANN. §§ 781(a)(7), 805(a)(2), 813, 820(1). The probate code permits a court overseeing a guardianship to make orders following the ward's death other than requiring a final accounting and closing the guardianship. For example, the code permits the court, after the ward's death, to order or approve the guardian's payment of funeral expenses, inheritance taxes, and "all other debts out of the estate." TEX. PROB.CODE ANN. § 746, 754. Accordingly, we cannot agree with the Corpus Christi Court that a guardianship necessarily ceases to exist on the death of the ward but can stay open after the death of the ward. The code leaves the decision of what debts to pay in the hands of the guardian, who must have the approval of the court, and the code provides a remedy should the deceased's personal representative have a complaint about the guardian's postmortem spending. *Id.* § 746. Thus, to the extent Mallard's fees were a debt owed by the Ward's estate, the court had authority to order their payment. *Id.*

▉▉▉▉▉ Bayne also asserts the court erred in approving the application to pay Mallard because the evidence did not show Mallard's services were necessarily incurred in the management of the Ward's estate. Whether the fees benefitted the Ward's estate was a disputed issue of fact determined by the court. In the order to pay Mallard's fees, the court stated, "[T]he Court finds that such attorney's fees and expenses are reasonable and just; that such fees were necessarily incurred in the administration of the Guardianship...." Bayne did not request the court to file findings of fact and conclusions of law, and the court did not file findings of fact and conclusions of law. In a trial to the court, where no findings of fact or conclusions of law are filed, the judgment of the court implies all necessary findings of fact to support it. *Gibson v. Ellis,* 126 S.W.3d 324, 335 (Tex.App.-Dallas 2004, no pet.). Where the implied findings of fact are supported by the evidence, it is our duty to uphold the judgment on any theory of law applicable to the case. *Id.* Likewise, when the court makes some findings on a claim but has omitted one or more elements of the claim, the omitted elements will be presumed when supported by some evidence. TEX.R. CIV. P. 299.

In this case, Mallard's testimony explained how the fees were necessarily incurred in the management of the Ward's estate. Bayne argues that Mallard's testimony shows his fees were not necessarily incurred in the management of the Ward's estate because the fees were incurred after the Ward had died and included fees for representing the Bank as guardian at a probate hearing. Neither of these events prevents the fees from having necessarily been incurred in the management of the Ward's estate. Bayne also cites evidence that the Bank had not filed the annual accountings or the final accounting as required by statute and had improperly accepted and cashed Social Security and Veterans Administration checks after the Ward's death; none of these events interferes with the propriety of Mallard's services and fees.

We conclude the record does not show the court abused its discretion in ordering the Bank as guardian of the Ward's estate to pay Mallard's fees.

## CONCLUSION

We affirm the January 21, 2004 order. We vacate the March 16, 2004 order to retransfer $20,000 from the Deceased's estate to the Ward's estate. We vacate the

March 16, 2004 order to pay Mallard insofar as it orders Bayne as independent executor to pay Mallard's attorney's fees, and we affirm the order to the extent it orders the Bank as temporary guardian to pay Mallard.