

# NUMBER 13-22-00592-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE MATTER OF THE GUARDIANSHIP OF ROBERT LEWIS HINDMAN, AN INCAPACITATED PERSON

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2 OF VICTORIA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Longoria**

Appellee Virginia Hindman was appointed by the trial court as guardian of the person and estate of Robert Lewis Hindman, her husband. Subsequent to Virginia's appointment, appellant Joel Barham filed an amended "Motion to Set Aside Void Provisions of Order, and in the Alternative[,] Original Petition for Bill of Review," which we construe as an amended bill of review. The trial court denied Barham's amended bill of review. In two issues, which we address as one, Barham argues that the trial court abused

its discretion when it denied his amended bill of review. We reverse and remand.

## I. BACKGROUND

On May 5, 2022, Virginia filed her original application for appointment of guardian of the person and the estate of Robert. On the same date, Virginia filed a motion for appointment of an attorney ad litem for Robert. The next day, May 6, 2022, the trial court signed its order appointing an attorney ad litem for Robert.

On May 10, 2022, Virginia filed an amended application for appointment of guardian of the person and the estate of Robert. In her amended application, among other things, Virginia sought to be appointed as the guardian of the estate of Robert, specifically requesting

9. The power to create or change rights of survivorship on any and all [of Robert's] accounts including, but not limited to, accounts at Frost Bank, Frost Bank Wealthscape[,] and Navy Federal Credit Union.

10. The power to create or change a beneficiary designation on any and all [of Robert's] accounts including, but not limited to, accounts at Frost Bank, Frost Bank Wealthscape, and Navy Federal Credit Union[.]

On May 19, 2022, a "Physician's Certificate of Medical Examination" was filed into the proceeding. In the certificate, J. Armando Diaz, M.D., a physician, indicated that he had examined Robert on March 9, 2022 and indicated that, among other things, Robert was totally without capacity to care for himself and to manage his property. On the same day, a report by clinical neuropsychologist Jennie Rexer, Ph.D., was also filed into the case. Dr. Rexer conducted a neuropsychological evaluation of Robert and indicated in her report that Robert had "the presence of severe memory impairment relative to other males [of ]his age and education," "significant decline in intellectual functioning,"

2

"[s]ignificant executive dysfunction," "[e]xpressive language impairments," and that "[his ability to] learn[] was moderately impaired." Dr. Rexer stated in her report that "[t]he severity and pattern of severely impaired memory including severely impaired storage/consolidation processes, executive dysfunction, expressive language changes, and intellectual decline are most consistent with a mild to moderate dementia, likely Alzheimer's disease."

On May 25, 2022, Robert's attorney ad litem filed his "Report of Attorney Ad Litem in Guardianship Proceeding." He opined in his report that "[Robert] cannot manage his person or his affairs and is in need of a Permanent Guardianship of his Person and Estate." He also recommended that the trial court "appoint [Virginia] as Guardian of [Robert's] Person and Estate" "[a]s a result of [the attorney ad litem's] investigation, the needs of [Robert] and the evidence offered in this case[.]"

On May 26, 2022, the trial court held a hearing on Virginia's amended application. At the hearing, Virginia testified that Robert was diagnosed with mild cognitive impairment and placed in hospice care on March 9, 2022. Virginia also testified regarding Dr. Diaz's and Dr. Rexer's findings, and stated that Robert's mental capacity had further declined since his examinations by Dr. Diaz and Dr. Rexer in March. The trial court took judicial notice of Dr. Diaz's certificate and Dr. Rexer's report. Virginia stated that Robert had difficulty managing his affairs for the past three to four years, and that he had overdrawn on some accounts and unintentionally closed a bank account. Virginia also stated that Robert had named a distant relative, a "grandnephew" he barely knew, as the beneficiary of his investment retirement account (IRA), which was the main asset of his estate.

3

Virginia did not testify as to the "grandnephew's" name, but expressed concern that Robert had "whittl[ed]" down his IRA and was giving it away to people. According to Virginia, prior to his dementia, it was not Robert's character to give money or most of his estate to people, including family members, that he really did not know. Virginia stated that the gift to the "grandnephew," among other things, demonstrated his decreased capacity and that he was no longer functioning at the level he had previously.

Virginia requested the trial court to appoint her as guardian of Robert's person and estate. Virginia requested the trial court to provide her with, among other things, the authority to manage Robert's financial accounts, including the power to create and change rights of survivorship and beneficiary designations. Virginia also specifically requested the power to change the beneficiary designation of Robert's IRA and to move the IRA to a different financial institution in order to remove the "grandnephew's" access to that account.

The trial court granted Virginia's amended application for guardianship and appointed Virginia as guardian of Robert's person and estate. The trial court's order provided Virginia, among other things:

23[.] The power to create or change rights of survivorship on any and all [of Robert's] accounts including, but not limited to, accounts at Frost Bank, Frost Bank Wealthscape, and Navy Federal Credit Union[.]

24[.] The power to create or change a beneficiary designation on any and all [of Robert's] accounts including, but not limited to, accounts at Frost Bank, Frost Bank Wealthscape, and Navy Federal Credit Union[.]

On July 5, 2022, Virginia filed her "Inventory, Appraisement, and List of Claims" into the proceeding. The filing stated that "This [i]nventory is produced by the undersigned

4

V[irginia] . . . indicating the assets of R[obert's e]state and their valuation as of the Guardian's qualification on May 26, 2022." The inventory indicated that Robert's estate included one account from Navy Federal Credit Union and two accounts from Frost Wealthscape, which were categorized as "cash assets." No other information was provided regarding these accounts. The inventory also indicated that Robert's estate contained no annuities, IRAs, life insurance, nor stocks, bonds, or securities.

On August 24, 2022, Barham's counsel filed his "Notice of Appearance," indicating that counsel was appearing on behalf of Barham, "an [i]nterested [p]erson, as defined in [§] 1002.018 of the Texas Estates Code." On September 14, 2022, Barham filed his original "Motion to Set Aside Void Provisions of Order, and in the Alternative[,] Original Petition for Bill of Review," and an amended version on October 12, 2022. In his amended filing, Barham alleged he was the named beneficiary of "one or more of Robert['s] . . . accounts" prior to May 2022 and that the trial court's May 26, 2022 order had granted Virginia, as Robert's guardian, powers "not authorized in the Texas Estates Code, namely 'the power to create or change rights of survivorship on any and all [of Robert's] accounts' and 'the power to create or change a beneficiary designation on any and all [of Robert's] accounts.'" According to Barham, the complained-of powers were "void," and the trial court "did[ not] have [the] jurisdiction or the power to grant [such] provisions in the [o]rder." Barham also cited to § 1056.101 of the Texas Estates Code and argued that he was entitled to a bill of review. *See* TEX. EST. CODE ANN. § 1056.101.

Virginia filed a general denial in response to Barham's amended filing on October 12, 2022. The trial court held a hearing on Barham's amended filing on October 13, 2022

5

and heard arguments from the parties. At the beginning of the hearing, Virginia informed the trial court that she had a motion in limine "speaking to the standing of Mr. Barham," that she had provided a copy to Barham, but indicated that the motion had not actually been filed.[1] The trial court allowed Barham to respond to the un-filed motion. Barham's counsel stated that Barham had a long-term relationship with Robert, that he was a beneficiary of Robert's non-probated estate, and that he was an "interested person under the [C]ode." Virginia argued that Robert was at high risk of being financially exploited, that Robert had previously been financially exploited by Barham, that Barham was an adverse party in the proceeding, and concluded that Barham "d[id] not have standing to contest this proceeding." Barham replied that he was not contesting the guardianship, but was rather asking the trial court to "void certain provisions of the Court's order in granting the guardianship, not the granting of the guardianship but some of the powers that the Court granted the guardian, because the Court doesn't have power or jurisdiction under the code to do so." Barham further stated that he was "not adverse" to Robert, that he had not been mentioned by name at "the hearing," and that there was no evidence that he had "financially exploited" Robert, and that Virginia's "testimony was she had concerns." The following exchange occurred:

| The Court: | Okay. Well, let me do this—well, did you want to respond one more time, [Counsel for Virginia]? |
| [Counsel for Virginia]: | If I might interject, [Counsel for Barham] said that [Barham] was not mentioned during the hearing, and that's not true. At the time, we thought he was a grandnephew, and it wasn't until the small estates affidavit that was done |

---

[1] The Clerks' record does not contain a filed motion in limine.

where I found out that he wasn't a grandnephew. He was like first cousin once removed or something to that effect. And so he was mentioned over and over again, the grandnephew. That was referring to Joel Barham.

[Counsel for Barham]: I don't see [Barham's] name in the transcript. That's all I was mentioning.

[Counsel for Virginia]: [Barham's] name wasn't mentioned but he was referred to in the transcript. And I do think it's important that [Counsel for Barham] is not certified. I thought his partner would be here because of the necessity of certification to be able to argue things in guardianship court. I know he said that [Counsel for Barham] doesn't need certification to argue a void judgment, but he's talking a lot like he's an attorney representing an interested person in a guardianship, is what he's referring to.

[Counsel for Barham]: And, I'm sorry, Judge, I thought we were talking about the motion in limine.

The Court: Let me do this.

[Counsel for Barham]: That's not mentioned in the—

The Court: Let me take the motion in limine under advisement and what I'm probably going to do is give y'all a chance to supplement anything, but let me take that under advisement and let me just consider the main motion at this time. Probably what I'm going to do here is just consider the motion, maybe give y'all a chance to supplement it, and then make a decision, is what I'm inclined to do. So let me hear you— since you have the motion to set aside these provisions, which you're indicating are void, tell me about that motion.

[Counsel for Barham]: Thank you, Judge.

7

The trial court continued hearing arguments over Barham's amended filing. Barham argued as he did in his amended bill of review, that nothing in the estates code authorized the trial court to grant the complained-of powers to a guardian. Virginia argued that there were several different statutes within the estates code that permitted those powers. The trial court did not rule on Barham's amended filing but set a schedule for the parties to file additional responses. No evidence was admitted at the hearing. Virginia's counsel also informed the trial court that Robert had passed away on June 11, 2022.

After the hearing, the parties filed responses, briefs and reply briefs in support of their positions. On November 28, 2022, the trial court entered its order denying Barham's "Amended Motion to Set Aside Void Provisions of Order, and in the Alternative[,] Original Petition for Bill of Review." The order did not contain findings of fact or conclusions of law, nor were any requested by the parties. This appeal ensued.

## II.    BILL OF REVIEW

Barham filed original and amended versions of his combined "Motion to Set Aside Void Provisions of Order, and in the Alternative[,] Original Petition for Bill of Review." Because Barham's original and amended filings occurred more than thirty days after the trial court issued its May 26, 2022 order appointing Virginia as guardian of Robert's person and estate, we construe those filings as an original and amended bill of review. *See* TEX. R. CIV. P. 329b(d) ("The trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed."); *see also* TEX. R. CIV. P. 329b(f) ("On expiration of the time within which the trial court has plenary power, a judgment cannot

8

be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law"); TEX. EST. CODE ANN. § 1056.101 (providing that "[a]n interested person . . . may, by a bill of review filed in the court in which the guardianship proceeding was held, have an order or judgment rendered by the court revised and corrected on a showing of error in the order or judgment"). Accordingly, we also construe the trial court's order at issue in this case as an order denying Barham's amended bill of review.

Barham lodges two issues on appeal. In his first issue, Barham argues the trial court abused its discretion "in denying the Motion to Void Provisions of Order." In his second issue, Barham argues that the trial court abused its discretion "in denying the Bill of Review." Because we construe Barham's combined filing as a bill of review, we address Barham's issues together.

## A.    Standard of Review and Applicable Law

A bill of review is a separate, independent suit, brought by a party to a former action, to set aside a final judgment that is no longer subject to a motion for new trial or appealable. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010); *Woods v. Kenner*, 501 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also* TEX. R. CIV. P. 329b(f). We review a trial court's ruling on a bill of review for an abuse of discretion, indulging every presumption in favor of the court's ruling. *Woods*, 501 S.W.3d at 190; *Xiaodong Li v. DDX Grp. Inv., LLC*, 404 S.W.3d 58, 62 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference to guiding rules and principles. *Woods*, 501 S.W.3d at 190; *Li*, 404 S.W.3d at 62.

A movant seeking an equitable bill of review must plead and prove (1) a meritorious defense to the underlying cause of action, (2) which the movant was prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on her own part. *Valdez v. Hollenbeck*, 465 S.W.3d 217, 226–27 (Tex. 2015) (elements of "equitable bill of review"). However, statutory bills of review, such as the one authorized by § 1056.101 of the Texas Estates Code, are not subject to the same limitations or requirements of an equitable bill of review. *Woods*, 501 S.W.3d at 191; *see also Valdez*, 465 S.W.3d at 226–27 ("Statutory bills of review are more scarce, existing predominately in the probate and guardianship contexts."); *McDonald v. Carroll*, 783 S.W.2d 286, 288 (Tex. App.—Dallas 1989, writ denied) (examining statutory bill of review found in the probate code). Section 1056.101 of the Texas Estates Code allows for a statutory bill of review in connection with guardianship proceedings, and provides that:

<blockquote>

(a) An interested person, including a ward, may, by a bill of review filed in the court in which the guardianship proceeding was held, have an order or judgment rendered by the court revised and corrected on a showing of error in the order or judgment.

(b) Except as provided by [s]ubsection (c), a bill of review to revise and correct an order or judgment may not be filed more than two years after the date of the order or judgment.

</blockquote>

TEX. EST. CODE ANN. § 1056.101(a), (b). The purpose of a statutory bill of review, such as that found in § 1056.101, is to "revise and correct errors, not merely to set aside decisions, orders, or judgments rendered by the probate court." *Nadolney v. Taub*, 116 S.W.3d 273, 278 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "[T]he interested party is required to allege and prove that the trial court committed substantial error." *Ablon v.*

10

*Campbell*, 457 S.W.3d 604, 609 (Tex. App.—Dallas, 2015, pet. denied) (interpreting statutory bill of review found in former § 657 of the Texas Probate Code (now TEX. EST. CODE ANN. § 1056.101(a)) and citing *In re Guardianship of Winn*, 372 S.W.3d 291, 294–95 (Tex. App.—Dallas 2012, no pet.)). Section 1002.018 of the Texas Estates Code defines an "interested person" as:

> (1)    an heir, devisee, spouse, creditor, or any other person having a property right in or claim against an estate being administered; or
>
> (2)    a person interested in the welfare of an incapacitated person.

TEX. EST. CODE ANN § 1002.018. Thus, we must determine whether all the elements of the statutory bill of review were established, i.e.: whether (1) an interested person (2) filed a timely bill of review, and (3) showed substantial error in the order or judgment. *See id.* §§ 1002.18, 1056.101(a), (b); *see also Buck v. Estate of Buck*, 291 S.W.3d 46, 53 (Tex. App.—Corpus Christi–Edinburg, 2009 no pet.) (reviewing a bill of review filed under former § 657 of the Texas Probate Code and holding that "[i]n an appeal from the denial of a statutory bill of review, [an appellate court] determine[s] . . . whether (1) an interested person (2) filed a timely bill of review, and (3) showed substantial error").

**B.    Discussion**

In his brief, Barham argues that he established every element required for a statutory bill of review under the Texas Estates Code. In her brief, Virginia argues that Barham failed to establish that he qualified as an "interested person" or showed substantial error.[2]

---

[2] It is undisputed that Barham filed a timely bill of review. *See* TEX. EST. CODE ANN. § 1056.101(b).

### 1. Interested Person

We first address whether Barham established that he was an "interested person." Virginia argues, among other things, that Barham "has never stated any 'property right in or claim against' [Robert]'s estate while it is being administered." *See* TEX. EST. CODE ANN § 1002.018(1). We disagree. Barham's amended bill of review alleged that prior to May 2022—before Virginia was appointed as Robert's guardian—he was "named as the beneficiary of one or more of Robert['s] . . . accounts." Barham further alleged that "Virginia . . . was not happy about this fact and wanted to have the beneficiary designation changed," and that "[Virginia] sought to thwart [Robert's] wishes, defrauded th[e] [c]ourt by requesting powers that are not authorized by the Texas Estates Code, and changed the non-probate beneficiary designations of [Robert] to herself." In addition, Virginia testified at the hearing on her application for guardianship that Robert had named a distant relative, a "grandnephew," as the beneficiary of his IRA, which she stated was the main asset of his estate. Virginia also testified that Robert had "whittl[ed]" down his IRA and was giving it away to people, and that she wanted to be able to change the beneficiary designation on that IRA account. Though Virginia did not testify as to the "grandnephew's" name, Virginia's counsel argued at the hearing on Barham's amended bill of review that Virginia's testimony regarding the beneficiary referred to Barham.

Moreover, at the hearing on Barham's amended bill of review, the trial court was informed that Robert had died on June 11, 2022. Under the Texas Estates Code, a "ward" is "a person for whom a guardian has been appointed." *Id.* § 1002.030. An "estate" is "a ward's or *deceased ward's property.*" *Id.* § 1002.010 (emphasis added). A ward's estate

12

does not cease to exist at the ward's death. *In re Guardianship of Bayne*, 171 S.W.3d 232, 236 (Tex. App.—Dallas 2005, pet. denied) (approving the payment of attorney's fees from the ward's estate after the ward's death). The Texas Estates Code requires the trial court to settle and close a guardianship proceeding upon the death of the ward. *See id.* §§ 1202.001(b)(1), 1204.001(a), (b)(1) (providing guardianship and guardianship of estate shall be settled and closed when ward dies). Here, it is undisputed that the trial court had not yet settled and closed the guardianship proceeding prior to the time Barham filed his amended bill of review. Thus, even after Robert's death, Robert's estate was being administered by Virginia as guardian of his estate at the time Barham filed his amended bill of review. Under these circumstances, we hold that Barham pleaded and proved that he was an "interested person" under the estates code. [3] *See id.* § 1002.018(1).

## 2. Substantial Error

Barham argues, among other things, that "[']the power to create or change rights of survivorship on any and all [of Robert]'s accounts['] and [']the power to create or change a beneficiary designation on any and all [of Robert]'s accounts[']" were not authorized by the Texas Estates Code.

Section 1151.101 provides that the guardian of the estate of a ward is entitled to:

(1)     possess and manage all property belonging to the ward;

(2)     collect all debts, rentals, or claims that are due to the ward;

(3)     enforce all obligations in favor of the ward;

---

[3] Because we have found Barham as a person "having a property right in or claim against an estate being administered," we decline to address Virginia's other arguments that Barham is not an "interested person" under Texas Estate Code § 1002.018. *See* Tex. Est. Code Ann. § 1002.018.

13

> (4)     bring and defend suits by or against the ward; and

> (5)     access the ward's digital assets as provided by Chapter 2001.

TEX. EST. CODE ANN. § 1151.101. In the management of a ward's estate, the guardian of the estate is governed by the provisions of Title Three of the Texas Estates Code, named "Guardianship and Related Procedures." *Id.* § 1151.101(b).

Under § 1151.103, the guardian of an estate of a ward may, without application to or order of the court:

> (1)     release a lien on payment at maturity of the debt secured by the lien;

> (2)     vote stocks by limited or general proxy;

> (3)     pay calls and assessments;

> (4)     insure the estate against liability in appropriate cases;

> (5)     insure estate property against fire, theft, and other hazards; and

> (6)     pay taxes, court costs, and bond premiums.

*Id.* § 1151.103(a). None of the provisions of § 1151.103 provide Virginia, as guardian of Robert's estate, authority to exercise the complained-of powers.

On written application to the court, a guardian of the estate may take an action described by § 1151.102(c) if the guardian considers the action in the best interests of the estate and the action is authorized by court order. *Id.* § 1151.102(b). A guardian of the estate who complies with § 1151.102(b) may:

> (1)     purchase or exchange property;

> (2)     take a claim or property for the use and benefit of the estate in payment of a debt due or owing to the estate;

(3)     compound a bad or doubtful debt due or owing to the estate;

(4)     make a compromise or a settlement in relation to property or a claim in dispute or litigation;

(5)     compromise or pay in full any secured claim that has been allowed and approved as required by law against the estate by conveying to the holder of the secured claim the real estate or personal property securing the claim:

   (A)     in full payment, liquidation, and satisfaction of the claim; and

   (B)     in consideration of cancellation of a note, deed of trust, mortgage, chattel mortgage, or other evidence of a lien that secures the payment of the claim;

(6)     abandon worthless or burdensome property and the administration of that property;

(7)     purchase a prepaid funeral benefits contract; and

(8)     establish a trust in accordance with 42 U.S.C. § 1396p(d)(4)(B), and direct that the income of the ward as defined by that section be paid directly to the trust, solely for the purpose of the ward's eligibility for medical assistance under Chapter 32, Human Resources Code.

*Id.* § 1151.102(c). Virginia argues that the complained-of powers were authorized by § 1151.102(c)(3), which permits a guardian to "compound a bad or doubtful debt due or owing the estate." We disagree, as said provision, on its face, makes no mention of the power to create or change rights of survivorship and beneficiary designations as neither are "debts." *Id.* § 1151.102(c)(3). We further hold that none of the actions described by § 1151.102(c) provides Virginia, as guardian of Robert's estate, authority to exercise the complained-of powers.

Virginia also argues that the list of actions that a guardian may do with court authorization under § 1151.102(c) is not exclusive, and "does not exhaust the full range

15

of what a guardian may appropriately do in managing the ward's property." In support of this argument, Virginia cites to *Benavides v. Alexander*, which we find inapposite as that case involved a challenge to a trial court's order that a ward, acting through the guardian of his estate, was entitled to possession and control of funds belonging to the ward in a joint account with a right of survivorship designation. 646 S.W.3d 14 (Tex. App.—San Antonio 2021, pet. denied). *Benavides* did not involve the issue before us, namely, whether the Texas Estates Code authorizes a guardian the power to create or change rights of survivorship and beneficiary designations on a ward's accounts.

Moreover, the Texas Estates Code makes plain that in managing a ward's estate, the guardian of the estate is governed by the provisions of Title Three of the Texas Estates Code. *See* TEX. EST. CODE ANN. § 1151.101(b). Thus, if there is any authority supporting the complained-of powers at all, it must be found within Title Three of the Texas Estates Code. *See id.* Virginia has not illuminated what provisions within Title Three authorize the complained-of powers, and we have found none. Having found no provisions within Title Three of the Texas Estates Code that authorize the complained-of powers, we conclude that Barham has pleaded and proved that the trial court committed substantial error in permitting Virginia, as guardian of Robert's estate, the power to create or change rights of survivorship and beneficiary designations on "any and all" of Robert's accounts. *See Ablon*, 457 S.W.3d at 609; *Buck*, 291 S.W.3d at 53. Thus, the trial court abused its discretion in denying Barham's amended bill of review. *See Woods*, 501 S.W.3d at 190; *Li*, 404 S.W.3d at 62. We sustain Barham's issue.[4]

---

[4] Having sustained Barham's issue, we do not address Barham's remaining arguments. *See* TEX. R. APP. P. 47.1.

### III.    CONCLUSION

We reverse the trial court's order denying Barham's amended bill of review and remand the case for further proceedings consistent with this opinion.

NORA L. LONGORIA
Justice

Delivered and filed on the
16th day of May, 2024.

17