# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00209-CV

---

**Elizabeth Weston, Appellant**

**v.**

**Nurses Case Management LLC d/b/a CareFor, Appellee**

---

**FROM COMAL COUNTY COURT AT LAW NO. 3**
**NO. 2021-GD0030, THE HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Elizabeth Weston appeals from the district court's order authorizing Nurses Case Management LLC d/b/a CareFor ("CareFor"), Guardian of the Estate of Glenn Weston, to sell certain of Glenn Weston's personal property, ratifying the sale, and ordering CareFor to file a report of the sale with the court.[1]  We will affirm the district court's order.

## BACKGROUND

In September 2022, CareFor was appointed the permanent guardian of the person (with limited authority) and the estate (with full authority) of Glenn Weston.  CareFor was granted the authority to manage Glenn's[2] property with all the powers granted by law to a

---

[1] Glenn Weston is the son of Elizabeth Weston and Graham Weston.

[2] Because the members of the Weston family share a surname, we will refer to them by their given names for clarity.

guardian of the estate of a ward who is partially incapacitated. In December 2022, CareFor filed an inventory of the estate's property, which included 50 shares of Whittington Investments, Ltd. ("Whittington") that had an estimated value of $450,000. On September 6, 2023, CareFor filed an Application for Sale of Personal Property. The Application stated that Whittington is a privately held company organized under the laws of the United Kingdom; that in August 2023 CareFor had received an offer to participate in a sale of a certain number of the Whittington shares to Grosvenor Limited; that liquidity opportunities with Whittington were rare; and that CareFor desired to participate in the sale and sell 35 of the 50 Whittington shares held by the Estate. The Application reported that the Estate had $39,161.75 in cash and that Glenn's care costs were approximately $30,000 per month.[3] CareFor also reported that it had a pending motion for reimbursement of $148,600 in expenses owed it by the Estate and that because two trusts of which Glenn is a beneficiary had not made distributions for his support, CareFor needed to raise cash to pay for his care.[4]

The terms of the purchase were that the Estate would enter into a transaction, the net result of which would be that the Estate would sell 35 of its Whittington shares and receive approximately $463,000 in cash. Due to the nature of the transaction, CareFor was given a short window of time to accept or decline the offer to purchase the Whittington shares. The day after filing the Application on September 6, 2023, citation was issued and all persons interested in Glenn's estate were cited to appear and object on or before September 18, 2023. Due to

---

[3] At the time, Glenn was living in a residential psychiatric treatment facility in Tennessee.

[4] CareFor stated that, although it had made requests for distributions from the trusts to pay for Glenn's care, Elizabeth, a co-trustee of the trusts, refused to make distributions to the guardianship estate.

2

difficulties serving Elizabeth with citation, CareFor had to request alternative service pursuant to Texas Rule of Civil Procedure 106. With the window for accepting the offer to buy the Whittington shares closing before CareFor could serve citation and set a hearing on the Application, and because the Estate lacked sufficient liquid assets to pay for continuing Glenn's treatment, CareFor moved forward with the sale on September 15, 2023.[5]

On January 17, 2024, CareFor filed an Amended Application for Sale of Personal Property and Application for Ratification of Sale. In the Amended Application, CareFor stated:

> The details of this sale were not known until August 2023. The time to elect sale of the shares was short, so [CareFor] was forced to agree to the sale or miss out on the rare opportunity to get some liquidity from the WIL UK holdings. As a result, [CareFor] had to enter into the transaction without sufficient time to file an application for sale and have that application considered by the Court before the time period for electing sale expired. The decision to sell the shares was made in consultation with Graham Weston, since as a director of the company and a shareholder himself he was able to provide advice on the advisability of the sale and the fairness of the sale price.

CareFor requested that the court approve and ratify the sale of the 35 Whittington shares, which had brought $423,000 cash into the Estate. On January 29, 2024, Elizabeth, appearing pro se and in the stated capacity of "Co-Trustee of the Truste [sic] and Estate of Glenn Weston," filed an objection to the request to ratify the sale. On February 6, 2024, Wayne Paris, an attorney, filed a Notice of Representation of Elizabeth. The probate court informed Paris that he was required to

---

[5] The probate court would not set a hearing on the Application until CareFor had shown personal service of citation on Elizabeth and Graham or that Elizabeth and Graham had filed waivers of citation. Graham filed a waiver, but Elizabeth refused to do so. Elizabeth had filed a notice with the court in August 2023 identifying "Ken Bueche" as her registered agent for receipt of notices filed in the court. However, when service was attempted on Bueche in September 2023, Bueche was no longer at the address provided for notices and he did not leave a forwarding address. Elizabeth refused to provide a home address for service so CareFor had to file a Motion for Substituted Service by Email Pursuant to Texas Rule of Civil Procedure 106.

file a State Bar of Texas certificate stating that he had successfully completed a course of study in guardianship law and procedure sponsored by the state bar or its designee. *See* Tex. Estates Code § 1054.201(a) (requiring attorney representing any person's interest in guardianship proceeding to be certified by State Bar of Texas as having successfully completed prescribed course of study), (b) (attorney must complete course not later than fourteenth day after filing appearance in guardianship proceeding and before filing any substantive motion). On February 27, 2024, Paris filed "Additional Objections to the Application for Sale of Personal Property," purporting to act on behalf of "Elizabeth Weston, an interested person." Paris had not provided the court with the section 1054.201 certification.

On February 29, 2024, the court held a hearing on the Amended Application. At the commencement of the hearing, the court ordered that Paris lacked authority to appear on Elizabeth's behalf due to his failure to file the section 1054.201 certification. Elizabeth then appeared pro se and objected to the sale, alleging it was "a fraudulent action." At the hearing, the court heard testimony from Graham and from Keri Mendoza, manager of patient services for CareFor. Mendoza testified about the urgent need for funds to care for Glenn; her discussions with Graham about the opportunity to sell the Whittington shares; the difficulty CareFor had with serving Elizabeth with citation; and the short timeframe CareFor had to act on the offer to purchase the shares. Graham testified about the history of the Whittington shares; explained that the August 2023 offer was a very good opportunity for the Estate to monetize the Whittington shares at a high value; and stated that Elizabeth's refusal as Co-Trustee to make distributions from Glenn's trust for his benefit presented CareFor with "no choice" but to liquidate the Whittington shares.

4

That day the court signed an order ratifying the sale. In its order, the court recited:

> The Court finds that the sale of such property is in the estate's best interest.
>
> The Guardian of the Estate is therefore authorized to sell 35 shares of W[h]ittington Investments Limited (UK) at private sale . . . . Given that the sale had to be complete with very short notice and prior to the Guardian of the Estate's being able to obtain authority for the sale from the Court, the Court ratifies the sale . . . .

Elizabeth then perfected this appeal. In five issues, Elizabeth asserts that (1) the probate court lacked subject matter jurisdiction to consider the Amended Application; (2) the probate court lacked the authority to approve and ratify a prior sale of the Whittington shares; (3) the probate court lacked the authority to approve the sale of the Whittington shares because they were a "specific legacy asset" excluded from sale under the Texas Estates Code; (4) the proceeds of the sale should have been "allocated to the principal of the trust, and not CareFor"; and (5) the probate court failed to properly set a hearing on the Amended Application and the clerk did not provide her with proper notice of the hearing, depriving her of her right to due process.

## DISCUSSION

### *Subject Matter Jurisdiction*

In her first issue, Elizabeth asserts that the court did not have subject matter jurisdiction over this guardianship proceeding because, in her view, subject matter jurisdiction over the Amended Application was vested exclusively in a district court. Elizabeth relies on Texas Property Code section 115.001, a provision found in the Texas Trust Code, which governs the creation, operation, and termination of trusts. *See* Tex. Prop. Code §§ 111.001-117.012. Section 115.001 provides that "a district court has original and exclusive jurisdiction over all

5

proceedings by or against a trustee and all proceedings concerning trusts." *Id.* § 115.001. The present case, however, is not a proceeding by or against a trustee nor does it concern a "trust" as that term is defined in the Texas Trust Code. *See id.* § 111.004(4) (defining "express trust" as "fiduciary relationship with respect to property which arises as a manifestation by the settlor of an intention to create the relationship"); (14) (defining "settlor" as "person who creates a trust or contributes property to a trustee of a trust"). This case involves the disposition of 35 Whittington shares, which were Glenn's personal property, not property held in trust. In September 2022, CareFor was appointed the permanent guardian of Glenn's person and of his estate, which included 50 Whittington shares. The order appointing CareFor the guardian of Glenn's person and estate granted CareFor "the authority to manage the property of the ward with all of the powers granted by law to a guardian of the estate of a ward who is partially incapacitated." Thus, this case is a "guardianship proceeding" governed by Title 3 of the Texas Estates Code. *See* Tex. Est. Code § 1002.015 (defining "guardianship proceeding" as "a matter or proceeding related to a guardianship . . . including an application, petition, or motion regarding guardianship"). Specifically, it is a request for a court order authorizing the sale of a ward's property. *Id.* ch. 1158 (governing sale or partition of ward's property). Title 3 of the Texas Estates Codes expressly provides that "all guardianship proceedings must be filed and heard in a court exercising original probate jurisdiction." *Id.* § 1022.001. The Comal County Court at Law No. 3 has original jurisdiction over probate proceedings. *See* Tex. Gov't Code § 25.0482(a) (county court at law in Comal County's jurisdiction includes probate jurisdiction). The court had subject matter jurisdiction to consider CareFor's Amended Application requesting authorization to sell Glenn's property. We overrule Elizabeth's first issue.

6

*Approval and Ratification of Sale*

In her third issue, Elizabeth asserts that the court could not authorize the sale of the Whittington shares because, in her view, the shares were a "specific legacy" excluded from a sale of a ward's property pursuant to Texas Estates Code subsection 1158.051(b)(2). *See* Tex. Est. Code § 1158.051(a) (requiring guardian of estate of ward to apply for court order to sell estate property that is liable to "perish, waste, or deteriorate in value, or that will be an expense or disadvantage to the estate if kept"), (b)(2) (excluding from sale under subsection (a) property "that is the subject of a specific legacy"). As an initial matter, the sale of the Whittington shares was not undertaken pursuant to section 1158.051—the shares were not found to be estate property likely to "perish, waste, or deteriorate in value" nor were they found to be property that would be an expense or disadvantage to the estate if kept. *See id.* § 1158.051(c) (providing factors court should consider when determining whether to order sale of asset under subsection (a)). The sale of the Whittington shares was undertaken pursuant to a different section of the Texas Estates Code, section 1158.101. *See id.* § 1158.101(a) (on application of guardian of estate of ward, court may order sale of any estate personal property not required to be sold by section 1158.051). Moreover, even if it qualified as property falling within the scope of section 1158.051, the Whittington shares were not "property that is the subject of a specific legacy" that would be excluded from a sale under that section. *See id.* § 1158.051(b) (providing that "property that is the subject of a specific legacy" may not be included in a sale under subsection (a)). The Texas Estates Code defines a "legacy" as "a gift or devise of real or personal property *made by a will*." *Id.* § 22.020 (emphasis added), *see also id.* § 22.021 (defining a person who is entitled to a legacy under a will as a "legatee"). For the Whittington shares to constitute a "specific legacy" excluded from sale by subsection 1158.051(b)(2), there would have to be

7

evidence that Glenn had made a testamentary gift or devise of the Whittington shares. The only evidence in the record is that the Whittington shares were owned by Glenn and were part of the guardianship estate that CareFor managed as Glenn's guardian. We overrule Elizabeth's third issue.

In her second issue, Elizabeth challenges the court's order approving and ratifying the sale of the Whittington shares after the sale had been completed, asserting that the court lacked authority to do so. A court's rulings on guardianship and probate applications are generally reviewed under the abuse of discretion standard. *See In re Guardianship of Bayne*, 171 S.W.3d 232, 235 (Tex. App.—Dallas 2005, pet. denied). A court abuses its discretion when its actions are unreasonable or arbitrary or are without reference to any guiding principles. *Saldarriaga v. Saldarriaga*, 121 S.W.3d 493, 497 (Tex. App.—Austin 2003, no pet.). However, when an issue involves only a question of law, we review that determination de novo. *In re Guardianship of Bayne*, 171 S.W.3d at 235.

To support her assertion that the court lacked authority to approve and ratify the sale after it had occurred, Elizabeth relies on *Johnson v. McClintock*, 202 S.W.3d 821 (Tex. App.—Corpus Christi-Edinburg 2006, no pet.). In *Johnson*, the guardian requested permission from the probate court to sell real property owned by the ward. 202 S.W.3d at 822. After the court denied the request, the guardian, without consulting the probate court, executed a quitclaim deed purporting to convey the property. *Id.* The court of appeals held that a guardian who "circumvented the probate court" and "never asked permission" to sell a ward's real property "had no right, title, interest, or claim to" the real property, and consequently, her quitclaim deeds conveyed nothing. *Id.* at 823. This case is easily distinguishable from *Johnson.* Here, CareFor filed an Application to sell the property with the probate court, but, due to a short time frame for

8

consummating the sale coupled with Elizabeth's refusal to file a waiver of citation or to provide a home address for service, which caused CareFor to have to file a motion for substituted service, CareFor was unable to set a hearing on its application before the window for executing the sale closed. After executing the sale, CareFor filed an Amended Application, explained the circumstances to the probate court and sought the court's approval and ratification of the sale. At a hearing, CareFor presented witnesses to explain why the sale was in the best interest of Glenn and the estate. In the present case, unlike *Johnson*, the guardian did ask the court's permission to sell the ward's property and did not "circumvent the probate court."

Elizabeth has provided no other authority, statutory or otherwise, to support her contention that the probate court could not exercise its discretion to approve and ratify the sale of the Whittington shares. The Texas Estates Code provides that, on application, the court may order the sale of estate property if it finds that the sale is in the best interests of the ward or the ward's estate to pay, from the proceeds of the sale, expenses of the care, maintenance, and education of the ward, expenses of administration, and allowances. *See* Tex. Est. Code § 1158.101(a) (1), (2), (3). With respect to the sale of personal property, the statute provides that *to the extent possible*, the application and order for the sale should conform to the process for the sale of real property, which permits the guardian to file an application with the court to sell real property of a ward's estate. *Id.* § 1158.102. Nothing in the statute precludes a probate court from authorizing and approving a sale of the estate's personal property after the fact, so long as the guardian complied with the statute *to the extent* possible and, in the exercise of its discretion, the probate court concludes that the sale, was in the ward's best interest.[6] At the

_____

[6] Texas appellate courts frequently approve the probate court's ratification of a guardian's or dependent administrator's prior action when the prior action was taken in the best interest of

9

hearing on the Amended Application, the court heard testimony from Mendoza and Graham regarding why the sale of the Whittington shares was in Glenn's best interest and why it was necessary to finalize the transaction before CareFor could secure a hearing with the probate court. Mendoza testified about the urgent need for funds to care for Glenn, her discussions with Graham regarding the opportunity to sell the Whittington shares, the difficulty serving Elizabeth, and the short timeframe CareFor had to act on the offer to purchase the shares. Graham testified about the history of the Whittington shares, explaining that the company is family-owned and that there is not a public market for sale of its shares; that this was the first time that "there was a strong price offered" for the shares; and that "this was by far the best price in 75 years of the company" for selling the shares. Graham and CareFor had multiple discussions about the advisability of selling the shares, and Graham advised CareFor that "this was a very good price and since the estate needed money this would probably be the only time in [his] lifetime that the shares will sell for this price." Graham also agreed that because the guardianship estate was running out of money and because Elizabeth, as Co-trustee of Glenn's two trusts, was objecting

---

the estate and there were circumstances that prevented obtaining prior court approval. *See Arizola v. Tutle & Tutle Trucking*, No. 04-11-00067-CV, 2012 WL 2335995, at *3 (Tex. App.— San Antonio June 20, 2012, pet. denied) (mem. op.) (dependent administrator's settlement of litigation without prior authorization from probate court "is an act that is voidable, but not void," and any error was cured by court's ratification of settlement agreement); *In re Kaufmans Guardianship Est.*, 429 S.W.2d 612, 617 (Tex. App.—Dallas 1968, no writ) (noting that while "the rights and duties of a guardian are statutory, . . .[t]he law is well settled that the guardian may expend money out of the estate without an order of the court for support and maintenance of his ward in cases of emergencies); *Pemberton v. Leatherwood*, 218 S.W.2d 500, 505 (Tex. App.—Eastland 1949, writ ref'd n.r.e.) (holding that guardian was authorized to spend estate money to pay for ward's medical care in hospital when necessary to do so before obtaining court order); *Green v. Masters*, 79 S.W.2d 184, 185 (Tex. App.—Dallas 1935, no writ) (recognizing equitable exceptions to general rule that guardian may not spend estate funds without court order and holding that guardian had authority, without previous court order, to use estate funds to purchase clothing for imprisoned ward who needed clean clothes to attend mental capacity hearing).

to making distributions to pay for his care, the best way to solve the current liquidity problem was to sell the Whittington shares. Based on this evidence, the court determined that the sale of the Whittington shares to pay for Glenn's care, maintenance, estate administration, and allowances was in the best interest of Glenn and Glenn's estate. *See id.* § 1158.101(a)(1), (2), (3). On this record, we cannot conclude that the court abused its discretion by approving and ratifying the sale, which had secured for the estate a price for the asset that the evidence showed would otherwise have been unattainable. We overrule Elizabeth's second issue.

In her fourth issue, Elizabeth asserts that the probate court erred by failing to order the proceeds of the sale of the Whittington shares to be paid Glenn, as principal of an unidentified trust. Elizabeth again mischaracterizes the nature of the property sold. As previously stated, the Whittington shares were not held in a trust but were personal property of the guardianship estate. In this issue Elizabeth also asserts that the probate court failed to consider whether the shares were "an asset that a trustee is authorized to invest" under Texas Property Code chapter 113 or 117, as required when selling estate personal property pursuant to section 1158.051. *See id.* § 1158.051 (directing guardian of estate of ward to apply to sell all estate property liable to perish, waste, or deteriorate, or that will be expense or disadvantage to estate if kept). As previously stated, section 1158.051 is not implicated in the sale of the Whittington shares, which were sold pursuant to section 1158.101 of the Texas Estates Code. The requirements of section 1158.051 have no bearing on the probate court's determination to approve and ratify the sale of the Whittington shares. We overrule Elizabeth's fourth issue.

11

*Notice of Hearing*

In her fifth issue, Elizabeth contends that the probate court did not comply with the notice requirements for a hearing on CareFor's Amended Application. Elizabeth maintains that her due process right to notice and an opportunity to be heard were violated because the probate court did not "designate in writing, a date and time for the hearing and application" and because the clerk of the court "did not issue notice of the date and time of the hearing to the applicant and each person who filed an objection."

The record demonstrates that at the conclusion of a January 12, 2024 status conference hearing, at which Elizabeth was present, the probate court, on the record, set a hearing on CareFor's request for the court to approve the sale for February 29, 2024, at 9:00 a.m. CareFor filed the Amended Application on January 17, 2024. Elizabeth filed her objections on January 29, 2024, stating therein that "on or about January 18, 2024, citation cited to appear to object to the sale on February 29, 2024." Thus, in her court filings, Elizabeth admitted that she received actual notice of the hearing. Attached to Elizabeth's objections was a transcript of the January 12, 2024 hearing wherein the court set the hearing for February 29, 2024 at 9:00 a.m. Finally, Elizabeth appeared at the hearing and raised her objections to the Amended Application. The requirement of due process is met if the notice of hearing affords the party a fair opportunity to appear and defend her interests. *Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 749 (Tex. App.—Austin 2006, pet. denied) (party's due process rights not violated by failure to provide written notice of hearing when party had actual notice of hearing and opportunity to appear and defend his interests). Elizabeth had actual notice of the hearing and appeared and filed her objections to the Amended Application. She has not demonstrated a violation of her due process rights. We overrule Elizabeth's fifth issue.

12

**CONCLUSION**

Having overruled each of Elizabeth's appellate issues, we affirm the probate court's order.

_____
Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   January 29, 2026